A03A0847. GANTT v. THE STATE.
(587 SE2d 255)

SMITH, Chief Judge.

Angel Marie Gantt was found guilty by a jury of driving under the influence of drugs to the extent that she was less safe to drive, OCGA § 40-6-391 (a) (2), driving without a license in her possession, OCGA § 40-5-29, and improper stopping, OCGA § 40-6-203. The accusation also included a "per se" count of DUI — driving with cocaine and its metabolites in her system in violation of OCGA § 40-6-391 (a) (6), but the State nolle prossed this count after the trial court granted Gantt's motion to suppress the results of the State-administered blood and urine tests. The State's motion to introduce similar transaction evidence and Gantt's general and special demurrers to the accusation were denied. Following entry of judgment, Gantt's motion for new trial was denied, and Gantt filed this appeal. She contends that the trial court erred in allowing the State to intro-

---

duce evidence that she refused the State's request for blood and urine tests and in denying her special demurrer to the accusation. We find no error and affirm.

At trial, the evidence showed that at approximately 2:45 a.m. in October 1999 a concerned citizen reported a possible drunk driver in Lawrenceville. A Lawrenceville police officer testified that he responded to the call. The officer observed the described car, a red Mitsubishi Eclipse, stopped at a traffic signal along with several other cars. When the light turned green the car in front of the Mitsubishi drove through the intersection, but the Eclipse remained stopped, forcing vehicles behind it to change lanes and go around it in order to proceed. Because the Eclipse remained stopped, cars approaching the intersection had to brake hard and go around it to keep from hitting the Eclipse.

The officer pulled his marked patrol car behind the Eclipse and activated his blue lights to prevent cars from colliding with the Eclipse. He left the police car and approached Gantt, the driver. The officer described her movements when she was trying to find her license and insurance card as "frantic, almost frenzied." Based upon his experience and training, the officer believed she had taken an overdose of some drug that was causing her "bizarre behavior." He believed she was not under the influence of alcohol but was under the influence of drugs, to the extent that she was a less safe driver.

Gantt was arrested, and the implied consent warnings were read to her. She was placed in the back of the patrol car. The officer testified that he

> noticed that her face was very flushed. She was very red. Her eyes were wide open. Her pupils appeared to be dilated real large. . . . The biggest thing that I noticed about her was she couldn't sit still, constant movement. She could not be still whatsoever. When I was trying to take her pulse I couldn't even get a pulse because she would not be still. . . . I couldn't even communicate with her. When she was in the back of the car . . . screaming . . . I asked her . . . What's hurting? . . . She could not or would not tell me anything. And then the constant motion again in the back of the car.

Gantt made no verbal response to the officer's request that she submit to a State-administered blood or urine test under the implied consent law statute but continued yelling and demanding to be released. Because the officer was concerned for Gantt's condition, he took her to the hospital before taking her to jail.

The emergency room nurse who treated Gantt at the hospital testified that Gantt's blood and urine were tested for drugs and that

the results were negative for cocaine. Because of Gantt's condition, she was given a sedative and restrained, but she remained combative, actively resisting the doctors and nurses and insisting that she wanted to leave. Portions of the samples taken were returned to the Lawrenceville Police Department, and the results of a preliminary screening urine test performed by a member of the department were also negative. The remainder of the samples was transported to the Georgia Bureau of Investigation crime laboratory for further testing. A different screening device used by the crime lab indicated the presence of cocaine or its metabolites. Further testing using gas chromatography/mass spectrometry was positive for both cocaine and one of its metabolites.[1]

1. Gantt contends the trial court erred in permitting the State to introduce evidence that she refused to take the blood and urine tests requested by the State. She argues that she neither refused nor consented, because she was incapable of making either decision. She points to the testimony of the arresting officer that she was "incoherent and non-responsive." We do not necessarily agree with Gantt that the officer described her as "incoherent." The officer indicated that he could understand what Gantt was saying but that Gantt did not respond to his request for a blood or urine test and generally did not respond to his questions except by saying "I don't know" and "sorry." And the nurse upon whose testimony Gantt relies testified that "she was very repetitive with her questioning" and that "I wouldn't necessarily say she was responsive."

It is clear, however, that Gantt had to be restrained to extract the blood and urine samples; she certainly did not cooperate with the hospital staff and kept saying she wanted to leave. In fact, Gantt successfully moved to suppress the results of the chemical tests by contending that her actions were "a nonverbal response" indicating that she was "trying to exercise her right to refuse." In its order granting Gantt's motion to suppress, the trial court found that Gantt "was not in a condition that left her incapable of withdrawing her consent, within the meaning of OCGA § 40-5-55 (b)." Instead, the trial court found that Gantt "was capable of withdrawing her implied consent to testing, and in fact refused the State's request to test." The court added that Gantt's "refusal shall be admissible against the Defendant for any lawful purpose."

Gantt accepted the benefit of the trial court's ruling, and the State nolle prossed Count 2 of the accusation. For three reasons, we

---

[1] The crime lab apparently conducted additional testing of Gantt's urine that revealed the presence of GHB, commonly known as the "date-rape" drug, as well. However, because this test result was not discovered by the prosecution until mid-trial and Gantt had not been apprised of this test earlier, the trial court declined to admit it.

find she cannot now reverse her position and argue that she did not refuse. First, Gantt is now judicially estopped from reversing the position she previously took and asserting the contrary position that she did not refuse. Under the doctrine of judicial estoppel, a party is precluded from asserting a position in a judicial proceeding that is inconsistent with a position that party previously asserted in a prior proceeding. *Stinson v. State*, 256 Ga. App. 902, 903 (1) (569 SE2d 858) (2002).

Second, a party may not complain on appeal of a ruling to which he or she contributed or in which he or she acquiesced. *Blackford v. State*, 251 Ga. App. 324, 327 (554 SE2d 290) (2001). Here, Gantt not only acquiesced in the trial court's ruling, she actively sought it.

Third, for policy reasons we cannot accept Gantt's argument. We agree with the State that if Gantt's argument were adopted, the most dangerous drivers — those who are incoherent — would be the most likely to avoid conviction.

Although the evidence did not demand the conclusion that Gantt's actions constituted a refusal, we find that the evidence authorized the trial court's conclusion.[2] The trial court therefore did not err in permitting the State to inform the jury that Gantt had refused to submit to State-administered chemical testing, as provided by OCGA § 40-6-392 (d).

2. Gantt also maintains that the trial court erred in denying her special demurrer to the accusation, in which she alleged that the accusation was vague because it recited only that she was under the influence of "drugs." She argues that she was unable to prepare her defense adequately because the accusation did not inform her which drug was in issue. This argument has no merit.

"OCGA § 17-7-71 (c) provides that every accusation which states the offense in the terms and language of the law . . . shall be deemed sufficiently technical and correct." (Punctuation omitted.) *Broski v. State*, 196 Ga. App. 116 (1) (395 SE2d 317) (1990). We have held that simply reciting the statute violated, although not desirable, is sufficient to meet the requirements of OCGA § 17-7-71 (c). Id. at 117.

Moreover, even if the failure to name the specific drug involved were error, on appeal, this court must apply a "harmless error" test to determine if the error prejudiced the defendant, requiring reversal. *Wade v. State*, 223 Ga. App. 222, 224 (477 SE2d 328) (1996). Here, the essence of the statute is that Gantt was a less safe driver

---

[2] Because Gantt exercised her right to refuse the State-administered chemical tests, we need not consider Gantt's argument based upon the holdings in *State v. Holmes*, 224 Ga. App. 29 (479 SE2d 409) (1996), and *Lee v. State*, 177 Ga. App. 8 (338 SE2d 445) (1985), that the arresting officer should have delayed reading the implied consent warnings until Gantt's condition was such that she was capable of consenting or refusing.

because she was under the influence of drugs. Gantt herself was in the best position to know which drug or drugs she had ingested, and she was therefore not prejudiced or misled. See *Broski, supra* at 118 (1). The accusation was sufficient, and the trial court did not err in overruling Gantt's special demurrer.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 8, 2003.

*Clark & Towne, Jessica R. Towne, Wystan B. Getz,* for appellant.
*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Assistant Solicitor-General,* for appellee.