A09A0196. PAGE v. THE STATE.

(674 SE2d 654)

MIKELL, Judge.

Cynthia Page was accused of driving under the influence of alcohol and drugs to the extent it was less safe for her to drive, OCGA § 40-6-391 (a) (4) (Count 1), driving under the influence of a controlled substance per se, OCGA § 40-6-391 (a) (6) (Count 2), and making an improper left turn, OCGA § 40-6-120 (a) (2) (Count 3). After her motion to suppress was denied, Page was found guilty by a jury on Counts 2 and 3. On appeal, Page contends that the trial court erred in denying her motion to suppress and her motion to quash Count 2 of the accusation. She also challenges the sufficiency of the evidence to support her conviction. Finding no error, we affirm.

1. Page argues that the trial court erred in denying her motion to suppress the results of her state-administered blood test. As no error of law appears on the record, and the trial court's findings of fact are supported by evidence adduced at the suppression hearing, the court's ruling is affirmed.[1]

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

---

[1] See *State v. Hester*, 268 Ga. App. 501, 506 (602 SE2d 271) (2004) (whole court) ("when no error of law appears on the record, and the trial court's ruling is based on the credibility of the oral testimony presented at the hearing, we must . . . leave the decision to the trial judge as the trier of fact").

[2] (Footnote omitted.) *Tune v. State*, 286 Ga. App. 32 (648 SE2d 423) (2007).

432

In this case, both Page and the arresting officer testified at the hearing. The trial court entered a lengthy order containing findings of fact and conclusions of law. The trial court's findings are summarized as follows.

On May 6, 2006, Page was observed making an improper turn onto McFarland Road and was stopped by Deputy Loring of the Forsyth County Sheriff's Department. Page's eyes appeared bloodshot and watery, so Loring asked her to perform field sobriety tests, one of which showed impairment. Loring then asked Page to blow into a portable breathalyzer. Page twice asked about her rights regarding the test, including the consequences of a refusal, and Loring twice told her the test was voluntary. After Page asked more questions, Loring put the breathalyzer in his patrol car and arrested Page for DUI — less safe. Page asked, "I don't get a DUI if I blow correctly at the jail, correct?" Loring responded, "I've determined you are a less safe driver. You are under arrest for DUI." Loring then read Page the implied consent warning and requested that she submit to a blood test. Page offered to take a breath test instead. Loring informed Page that she would have to submit to a blood test before she could have an independent breath test. Page stated that she would not submit to "anything except breath" and stated, "if I pass, you can't arrest me for DUI, right?" Loring responded, "I want blood." Loring read Page the implied consent warning a second time and again asked Page if she would take a blood test. Loring drove Page to jail, where she asked to take a breath test. Loring again told Page that she would have to take a blood test before she could have a breath test. Page then agreed to take a blood test. On the way to the hospital, Page again asked what would happen if she refused to submit to the blood test. Loring responded that she would be charged with "DUI refusal." At the hospital, Loring read Page the implied consent warning for a third time. Loring also allowed Page to call her attorney.[3] Her blood was then drawn. Afterward, Loring drove Page back to jail and administered a breath test to her. The result was 0.00.

In addition to the facts found by the trial court, we note that Page testified at the hearing that one of the reasons that she did not want her blood drawn was because "there were things in my past prior to that night that may not have been the best decision I made . . . [t]hat may . . . have . . . influenced a night in which I was innocent." Loring testified that Page asked him, "how far back does the blood test check?"

---

[3] Apparently Page was unable to get in contact with her attorney.

(a) At the hearing, Page contended, as she does on appeal, that she did not freely and voluntarily consent to the state-administered blood test because Loring provided her with false and misleading information concerning the consequences of her failure to take the test, which confused her and impaired her ability to make an informed decision under the implied consent law, and amounted to an "unlawful inducement." The following principle of law applies to this issue:

> Even when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.[4]

Thus, in *State v. Terry*,[5] we affirmed the grant of a defendant's motion to suppress evidence of her refusal to submit to a chemical test based on evidence that the officer, after correctly informing the defendant of her implied consent rights, subsequently misinformed her that she would have to "bond out" of jail before she could obtain an independent test.[6] In the case at bar, the trial court concluded, based on the evidence presented at the hearing, that Loring properly advised Page of her rights pursuant to OCGA § 40-5-67.1 (g) (2) (B); that in response to her repeated questioning, Loring informed Page that she was being arrested for DUI — less safe; and that Loring made no extraneous statements of the law beyond the implied consent notice. In challenging this ruling, Page asks that we reweigh the evidence. That is not the function of an appellate court.

> We cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision. We reiterate that we are a court for the correction of errors of law and cannot draw a different inference from the evidence

---

[4] (Citations and punctuation omitted.) *State v. Chun*, 265 Ga. App. 530, 531 (594 SE2d 732) (2004) (grant of defendant's motion in limine reversed because there was no substantial basis for the trial court's legal conclusion that the officer's statements, which the trial court had found were accurate, were so misleading that they rendered the defendant incapable of making an informed decision about whether to submit to chemical testing).

[5] 236 Ga. App. 248 (511 SE2d 608) (1999).

[6] Id. at 250-251.

> or make a credibility determination contrary to the one made by the trial court.[7]

As there is evidence to support the trial court's ruling that Page freely and voluntarily consented to the state-administered blood test, that ruling is affirmed.

(b) Page asserts that the procedures utilized by Loring to obtain her consent following an unequivocal refusal were not reasonable and were not applied in a fair manner. We disagree.

Page bases her argument, in part, on the fact that a videotape of the traffic stop reveals that at the scene, Page refused when asked whether she would take a blood test. Page contends that she was later unfairly persuaded to take the test. Page quotes *State v. Highsmith*,[8] in which this Court stated that in determining whether a suspect was given a timely implied consent warning and whether he revoked his implied consent, "the court must evaluate the officer's actions to determine if the officer acted reasonably in the situation and whether the procedure was applied in a fair manner."[9] In that case, we concluded that the officer acted reasonably when he told the defendant, whose initial refusal was equivocal, that the test would be quick and painless, and then the defendant agreed to take the test. Subsequently, in *Howell v. State*,[10] we concluded that the police acted unfairly and unreasonably when they instructed the defendant to blow into an Intoxilyzer even though he had unequivocally refused to take a breath test after being read implied consent warnings.[11]

Page argues that even though she allowed blood to be taken from her arm at the hospital, her consent was invalid under *Howell*. We disagree. Although Page refused when asked at the scene of the traffic stop whether she would take a blood test, the evidence adduced at the hearing shows that she later rescinded her refusal and consented to the test. The officer even permitted her to call an attorney before her blood was drawn, although he was not required to do so.[12] By contrast, the defendant in *Howell* unequivocally revoked his implied consent and was not asked again whether he would consent to a state-administered test before being instructed to submit to one. *Howell* is thus distinguishable from this case. Here,

---

[7] (Punctuation omitted.) *State v. Sanders*, 274 Ga. App. 393, 398 (617 SE2d 633) (2005), citing *State v. Ellison*, 271 Ga. App. 898, 904 (6) (611 SE2d 129) (2005).

[8] 190 Ga. App. 838 (380 SE2d 272) (1989).

[9] Id. at 839.

[10] 266 Ga. App. 480 (597 SE2d 546) (2004) (whole court).

[11] Id. at 482 (1) (a).

[12] *Rackoff v. State*, 281 Ga. 306, 308 (1) (637 SE2d 706) (2006) ("a driver is not entitled to consult with an attorney before taking a breath test").

the officer's actions, including reading Page the implied consent warnings multiple times, were reasonable and the procedure he utilized was fair.

(c) Page further contends, as she did in the trial court, that the results of her blood test should have been suppressed because she conditioned her consent upon the ability to speak with an attorney. Again, the trial court found otherwise, and we will not disturb its factual finding.[13] The trial court found that Page submitted to the blood test after being read the implied consent warning a third time and that her consent was not conditional. The trial court also correctly noted that a suspect is not entitled to an attorney when deciding whether to submit to a state-administered test;[14] thus, the fact that Loring permitted Page to call an attorney was a mere courtesy and did not invalidate her consent.

2. In her second enumeration of error, Page argues that the trial court erred in denying her oral motion to quash Count 2 of the accusation, contending that it does not contain all of the essential elements of OCGA § 40-6-391 (a) (6). We disagree.

> The true test of the sufficiency of an indictment or accusation or citation is not whether it could have been made more definite and certain or, for that matter, perfect, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Thus, if the accused can admit all the indictment or accusation or citation charges and still be innocent of having committed any offense, the indictment or accusation or citation is defective.[15]

Guided by these precepts we examine the accusation in the case at bar. Count 2 charged Page with

## DRIVING UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE — PER SE (BENZOYLECGONINE)

---

[13] See *Hester*, supra.

[14] *Rackoff*, supra.

[15] (Citation and punctuation omitted.) *Ross v. State*, 235 Ga. App. 7, 8 (508 SE2d 424) (1998) (accusation for reckless driving fatally defective because it omitted language that defendant drove "in reckless disregard for the safety of persons or property," OCGA § 40-6-390 (a)). See also *Pullen v. State*, 199 Ga. App. 881 (406 SE2d 283) (1991) (accusation charging defendant with DUI because he "did unlawfully drive and be in [sic] actual physical control of a motor vehicle" was fatally defective) (punctuation omitted).

YALE LAW LIBRARY

. . . by being in actual physical control of a moving vehicle when benzoylecgonine, a controlled substance, was present in her blood, in violation of OCGA §[§] 40-6-391 (a) (6) and 16-13-21.

According to OCGA § 40-6-391 (a) (6), "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . there is any amount of . . . a controlled substance, as defined in Code Section 16-13-21, present in the person's blood or urine, or both, including the metabolites and derivatives of each or both." OCGA § 16-13-21 defines a "controlled substance," in pertinent part, as "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29."[16] Cocaine and its derivatives are listed in OCGA § 16-13-26 as Schedule II controlled substances.[17] At trial, the state's forensic toxicologist, Troy Dettmering, testified that benzoylecgonine was a metabolite of cocaine.

Page argues that the accusation is fatally flawed because it incorrectly states that benzoylecgonine is a controlled substance, rather than a metabolite of a controlled substance. We conclude that, although the accusation could have been more artfully drawn, it is not legally insufficient. "As long as the defendant is informed of the charges against him so that he may present his defense at trial and not be surprised by the evidence against him, as well as protect against another prosecution for the same offense, the [accusation] is sufficient."[18] Here, the accusation informed Page of the charge against her by reciting the appropriate Code section, OCGA § 40-6-391 (a) (6), which criminalizes driving with metabolites of a controlled substance present in the person's blood.[19] Benzoylecgonine is a metabolite of a controlled substance — cocaine.[20] Page could not have admitted to all that was charged in Count 2 and still be innocent of having committed any offense. Certainly she could not have been surprised or misled to her prejudice by the evidence at

---

[16] OCGA § 16-13-21 (4).

[17] OCGA § 16-13-26 (1) (D).

[18] (Punctuation omitted.) *Wade v. State*, 223 Ga. App. 222, 224 (477 SE2d 328) (1996), citing *Broski v. State*, 196 Ga. App. 116, 117 (1) (395 SE2d 317) (1990). See also OCGA § 17-7-71 (c): "Every accusation which states the offense in the terms and language of the law or so plainly that the nature of the offense charged may be easily understood by the jury shall be deemed sufficiently technical and correct."

[19] See *Gantt v. State*, 263 Ga. App. 102, 105-106 (2) (587 SE2d 255) (2003) (accusation for driving under the influence of drugs sufficient although it failed to name the specific controlled substance).

[20] *Cooper v. State*, 277 Ga. 282, 283, n. 1 (587 SE2d 605) (2003); *State v. Jewell*, 228 Ga. App. 825 (492 SE2d 706) (1997).

trial because she was aware of the substance she ingested.[21] The accusation was sufficient.

3. Finally, Page argues that the evidence is insufficient to support her conviction of per se DUI. We disagree. In accordance with the accusation and OCGA § 40-6-391 (a) (6), the state was required to prove that Page was in actual physical control of a moving vehicle when benzoylecgonine, a metabolite of a controlled substance, was present in her blood. Detective Loring testified that he stopped Page at 2:08 a.m. while she was driving because she made an improper turn and that her blood was drawn at approximately 3:35 a.m. The forensic toxicologist testified that a level of 0.24 milligrams per liter of benzoylecgonine was present in Page's blood sample. Construing the evidence to support the verdict, as we must, we conclude that the state presented sufficient evidence for the jury to find Page guilty of violating OCGA § 40-6-391 (a) (6) beyond a reasonable doubt.[22]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 4, 2009.

*Monte K. Davis*, for appellant.
*Leslie C. Abernathy, Solicitor-General, Amy Millard Radley, Assistant Solicitor-General*, for appellee.

---

[21] See *Gantt*, supra at 106 (2); *Broski*, supra ("if a defendant is not misled to his prejudice by any imperfection in an indictment an appellate court will not reverse") (citation and punctuation omitted).

[22] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).