## A90A1081. HAMRICK v. THE STATE.
(401 SE2d 25)

BEASLEY, Judge.

Defendant appeals his convictions of habitual violator, OCGA §
40-5-58 (c), driving under the influence of alcohol, OCGA § 40-6-391,
and fleeing and attempting to elude the police, OCGA § 40-6-395. He
contends the evidence was insufficient to sustain his convictions, his
motion to suppress should have been granted, and his sentence was
illegal because it was vindictive.

1. Prior to trial, defendant moved to suppress items of personal
property seized within the curtilage of his home plus testimony as to
the results of a chemical test to determine the amount of alcohol in
his blood. At trial defendant also sought to exclude testimony about
items found in or near his house as well as the results of an intoxime-
ter test. Because a motion to suppress under OCGA § 17-5-30 con-
templates the suppression only of tangible physical evidence, defend-
ant in effect proceeded under both a motion to suppress and a motion
in limine. See *Roberts v. State*, 175 Ga. App. 326, 328 (1) (333 SE2d
189) (1985), and *State v. Johnston*, 249 Ga. 413, 415 (3) (291 SE2d
543) (1982).

He urges that because he was illegally arrested in his home with-
out a warrant any evidence resulting from that arrest was tainted and
inadmissible. The circumstances of that arrest follow.

Norcross Police Officer Stidd spotted a yellow motorcycle driving
with no headlights in excess of the speed limit in a residential area. It
was nighttime. He notified his station and proceeded to the street
where he last observed the motorcycle, parked there and waited. The
motorcyle appeared again and approached him, passing within a few
feet of where he was stopped. He turned his emergency equipment on
in an effort to halt the motorcyle which then speeded up and drove
away. The officer pursued, as the motorcycle ran through two red
lights.

Stidd lost sight of the motorcycle but was able to continue the
chase with the aid of directions from the operator of a vehicle which
swerved off the road to avoid a collision with the motorcycle. Again
losing sight of it, Stidd was informed by the occupants of a vehicle at

the fork of a road that the motorcycle had left the road at Nesbitt Island, a street nearby. Because it had been raining, Stidd saw motorcycle tracks on the soft ground going down a dirt drive. He followed the tracks on foot to the back of a house where he found a yellow motorcycle leaning against the house. The motor was very hot and the motorcycle was dripping mud and water.

Two fellow officers joined Stidd and they approached the front of the house, where they knocked on the door. A woman appeared whom Stidd informed that they wanted to see the operator of the motorcycle. She stated that her husband was asleep and was told to wake him up. The police entered the house when defendant appeared in his underwear in the living room. He was told to put his trousers on and was advised he was under arrest for reckless driving, no headgear, operating without headlights, no eye protection, and attempting to elude the police. Asked for his driver's license, defendant responded that he was a habitual violator. During this time, Stidd noticed that there was a pair of wet boots with fresh mud on them in the living room area.

Defendant was transported to the police station and, because of the smell of alcohol on his breath and his "combative actions," he was given an intoximeter test. The results were .12 grams percent. The officer who administered the test testified that in his opinion defendant was under the influence of alcohol to the extent that it was less safe for him to drive.

"*Payton v. New York*, 445 U. S. 573 [(100 SC 1371, 63 LE2d 639)] (1980), held that, absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment." *Welsh v. Wisconsin*, 466 U. S. 740, 741 (104 SC 2091, 80 LE2d 732) (1984). See *Steagald v. United States*, 451 U. S. 204 (101 SC 1642, 68 LE2d 38) (1981); *Thompson v. State*, 248 Ga. 343 (285 SE2d 685) (1981). In *Brown v. State*, 163 Ga. App. 209, 210 (1) (294 SE2d 305) (1982), this court held that an arrest in a private dwelling was a lawful activity when based upon the theory of "hot pursuit."

The "hot pursuit" doctrine has been applied in consideration of an officer's power to effectuate an arrest outside of his geographical limits. *Poss v. State*, 167 Ga. App. 86, 87 (305 SE2d 884) (1983). Besides its utilization in conjunction with territorial barriers, it also has been applied to arrests in private dwellings. See *Warden v. Hayden*, 387 U. S. 294 (87 SC 1642, 18 LE2d 782) (1967); *United States v. Santana*, 427 U. S. 38 (96 SC 2406, 49 LE2d 300) (1976). In *Santana*, the court held that "a suspect may not defeat an arrest which has been set in motion in a public place, . . . , by the expedient of escaping to a private place." Id. at 43.

In *Welsh v. Wisconsin*, 466 U. S. 740, supra, the Supreme Court found that the arrest of defendant in the privacy of his own home for

a noncriminal traffic offense could not be justified on the basis of the "hot pursuit" doctrine because there was no immediate or continuous pursuit from the scene of the crime. The court reiterated there must be exigent circumstances.

*Poss*, supra at 87, pointed out the critical elements of "hot pursuit" are continuity and immediacy of the pursuit. Here, although there were undoubtedly slight breaks in the action, the pursuit of defendant was maintained in a continuous manner at least up until the yellow motorcycle was discovered leaning against the side of defendant's house. At this point its investigation was permissible. *Griffith v. State*, 172 Ga. App. 255, 256 (1) (322 SE2d 921) (1984) (physical precedent).

As to entering the house, the circumstances were not such as made it necessary to effect an immediate arrest. The crimes were misdemeanors. The unlawful operation of the motorcycle and the threat to public safety had come to a stop. There was no evidence that the person would escape. Three officers were present, and one could have gone to seek an arrest warrant. The police did not fear the destruction of evidence, as in *Santana*, supra. The officers did not at this time suspect defendant's intoxication, evidence of which would have dissipated over time. There was no need to enter the house, as defendant was coming out as requested. "Exigency" faded from the picture, and left defendant's right to prevent an unwarranted invasion of his home superior. See *Thompson*, supra; *Welsh*, supra.

The trial court should have granted the motion to suppress/in limine insofar as it covered the exclusion of evidence gathered after the officers entered defendant's house without a warrant. Insofar as defendant specifies what should be suppressed, this would include the muddy boots and the results of the chemical test of defendant's blood alcohol levels.

2. Because a reversal must result which will affect the fundamental elements of any further trial, the remaining enumerations of error predicated upon the findings of the jury and the judgment entered thereupon need not be considered.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 14, 1990 —
REHEARING DENIED DECEMBER 19, 1990.

*Phillip N. Lavender*, for appellant.
*Thomas C. Lawler III, District Attorney, R. Keith Miles, Debra K. Turner, Assistant District Attorneys*, for appellee.