## A93A2467. THE STATE v. BROWN.
(442 SE2d 818)

BIRDSONG, Presiding Judge.

The State of Georgia appeals the grant of Ronald Brown's motion to suppress evidence.

The State's evidence at the hearing on motion to suppress shows that police officers on patrol drove into an apartment complex in Atlanta where arrests had been made for drug activity in the past. They saw a group of people sitting and standing a few feet from an apartment. The officers did not see anyone engaging in drug activity. The arresting officer testified that appellee was not holding anything and the officer "did not see [appellee] do anything" and did not see anything in appellee's hands. Appellee appeared to be looking toward the police car and then turned and ran 10-15 feet toward the door of the nearby apartment. He was the only one who "ran." Appellee appeared to struggle with the apartment door, but the door was not locked and appellee entered the apartment. The officers followed him into the apartment. One officer saw appellee reach the end of the apartment, turn around, and drop a bag, which the officer then picked up. The officer testified the bag contained 16 hits of crack cocaine. The apartment's resident, Jennifer Tabb, screamed when she saw appellee and the police officers.

When the police drove up, Rema Tabb, the sister of the apartment's resident, was sitting on the porch of the apartment with about eight friends, both male and female. She testified that appellee was inside the apartment when the police drove up. The officer said, "Hey you, come here," and appellee closed the door. The officers followed appellee inside and the arresting officer went right through to the bathroom, reached up and recovered a bag from a shelf and said to Jennifer Tabb, "Look what I found on your shelf." Although the apartment resident, Jennifer Tabb, signed an affidavit at the time of the arrest saying that appellee did not have permission to enter her home, at trial she testified she was forced to sign this affidavit by threats that her children would be taken from her. Both Jennifer and

her sister Rema (appellee's girl friend) testified that appellee frequently visited the apartment and had permission to enter. Appellee was placed under arrest for burglary, for which he was not indicted, and for possession of cocaine with intent to distribute. *Held*:

1. On review of a ruling on a motion to suppress, we construe the evidence most favorably to the trial court's ruling, as the trial court has ruled on disputed evidence and the credibility of the witnesses, and we must accept that ruling unless it is clearly erroneous. *Johnson v. State*, 233 Ga. 58 (209 SE2d 629); *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324). We are not authorized to substitute our findings of fact for those of the trial judge.

This case is distinguished from *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198), where there was no police entry into a dwelling. Construed in favor of the trial court's findings, the evidence shows that appellee was either inside the apartment when police arrived, or he was standing with a group of friends on the porch or near the door of the apartment and he went inside when the police drove up.

No offense was committed in the officer's presence outside the apartment (OCGA § 17-4-20 (a)) and no suspicious activity or contraband was seen before police entered the apartment. Absent probable cause and exigent circumstances, warrantless entries into the home are limited by the Fourth Amendment. *Hamrick v. State*, 198 Ga. App. 124, 126 (401 SE2d 25). An arrest in a private home based on "hot pursuit" is a lawful arrest when a suspect, as to whom police have probable cause, attempts to escape into the house. Id. at 126-127; *Brown v. State*, 163 Ga. App. 209, 210 (1) (294 SE2d 305). But there was no probable cause as appellee had not been seen engaging in any criminal activity and, construing the evidence in favor of the trial court's ruling, he was not attempting to escape after being seen engaging in suspicious activity. See OCGA § 17-4-20 (a). As no criminal activity was observed by police, the mere fact that (according to police) appellee "ran" inside the apartment when the police drove up did not provide probable cause and/or exigent circumstances authorizing the police to enter Jennifer Tabb's home to arrest appellee without a warrant (*Hamrick*, supra); in any case, the evidence construed in favor of the trial court's ruling shows appellee did not "run" inside, but was standing at or near the apartment door when police drove up, or was inside the apartment.

On appeal, we are not authorized to substitute our findings of fact for the trial court's; construing the evidence in favor of the trial court's ruling, we find the ruling was supported by some evidence, and was not clearly erroneous. *Corley*, supra.

2. The question is raised of appellee's standing to object to the unlawful intrusion into his girl friend's sister's apartment.

The evidence viewed in favor of the trial court's ruling shows that

appellee and his girl friend were regular social visitors to Jennifer Tabb's apartment. Tabb testified that her sister Rema, appellant, Tabb's friend Estella, and Estella's brother Darryl and others were on and in the area of the porch of her apartment. Appellee had an established relationship with Tabb as her frequent social guest. He and Jennifer Tabb had been friends a long time; he had dated her sister Rema two or three years. Appellee had left clothing and personal effects at Jennifer Tabb's apartment: "his coat, his radio, things like that." *He had spent the night at her house on occasion.* The front door was closed but not locked, as there had been a lot of shooting outside and Tabb would not lock the door while her sister was outside. Although Rema Tabb testified appellee was inside the house and the door was open when police arrived, the trial court reconciled the evidence in determining its weight and the witnesses' credibility, whether appellee was lounging on the porch with friends with the apartment door closed or whether he was inside the apartment when the police arrived, the undisputed evidence is that he was in the apartment when the police made this warrantless intrusion.

It is not generally the law that a "mere visitor" has no expectation of privacy in premises of another, as we said in the unusual circumstances of *Delgado v. State,* 192 Ga. App. 356 (384 SE2d 680), citing *Rakas v. Illinois,* 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387). In *Minnesota v. Olson,* 495 U. S. 91, 96, fn. 5 (110 SC 1684, 109 LE2d 85), the Supreme Court said that a place "need not be respondent's 'home,' temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there. *'(T)he Fourth Amendment protects people, not places,' Katz v. United States,* 389 U. S. 347, 351 [88 SC 507, 19 LE2d 576], *and provides sanctuary for citizens wherever they have a legitimate expectation of privacy.* Id., at 359." (Emphasis supplied.) "Olson's status as an overnight guest [was] alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Minnesota v. Olson,* supra at 96-97.

The Supreme Court relied on *Jones v. United States,* 362 U. S. 257 (80 SC 725, 4 LE2d 697) for the " 'unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion.' " *Minnesota v. Olson,* supra at 97-98; *Rakas* at 141-142. The distinctions that in *Jones,* the defendant had a key to his friend's home and could "come and go and admit and exclude others," whereas Olson was never left alone in the house, "are not legally determinative." *Minnesota* at 98. To hold "that an overnight guest has a legitimate expectation of privacy in his host's home" is a sufficient-but-not-necessary holding; it *"merely recognizes the everyday expectations of privacy that we all share.* Staying overnight

in another's home is *a longstanding social custom that serves functions recognized as valuable by society. . . .* We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that *society recognizes that a houseguest has a legitimate expectation of privacy in his host's home. . . .* [The overnight guest] seeks shelter in another's home precisely because it provides him with privacy. . . . Society expects at least as much privacy in [the home of a friend] as in a telephone booth — 'a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.' *Katz,* [supra]." (Emphasis supplied.) Id.

Olson's expectation of privacy was legitimate not because he spent the night, but because his expectation of privacy was rooted in "understandings that are recognized and permitted by society," (*Rakas,* supra at 144, n. 12) and was one "society is prepared to recognize as reasonable." *Minnesota v. Olson,* supra at 97. Compare *United States v. Hicks,* 978 F2d 722, 723-724 (D.C. Cir.), where the court held that one arrested while using another's home to conduct an illegal business was not engaging in a longstanding social custom that serves functions recognized as valuable by society. See also *United States v. McNeal,* 955 F2d 1067, 1070 (6th Cir.).

Viewing the evidence in favor of the trial court's ruling, appellee had a legitimate expectation of privacy in the apartment of Jennifer Tabb. He was a frequent welcome social visitor, he left possessions there, and he had spent the night as a social guest. That he may not have been spending the night on this occasion does not alter his status as Tabb's social guest. He had been allowed previously to "seek shelter" by entering her house on a recurring basis, and *that is what he did on this occasion* — he entered her house. As the evidence viewed to support the trial court's ruling shows, he was not a stranger standing on the street; he was not seen doing anything illegal. He was in the apartment or on or around the porch, visiting with Tabb's sister and other social friends of Tabb, male and female, and he entered her home just prior to police intrusion while he was in a social guest status. This sort of visiting is "a longstanding social custom that serves functions recognized as valuable by society." *Minnesota v. Olson,* supra at 98. Appellee's expectation of privacy in Tabb's home was "rooted in 'understandings that are recognized and permitted by society.' Id. at 100, citing *Rakas,* supra at 144. The evidence shows appellee had the right to "[seek] shelter in [Tabb's] home precisely because it provide[d] him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. at 99.

In *Delgado,* supra at 357, cited for the overbroad concept that a "mere visitor" has no expectation of privacy in the premises of an-

other where he has neither a proprietary nor a possessory interest, the defendant was no more than a "drop-in" who knocked on a motel room door while police were executing a search warrant inside. Neither *Delgado* nor any other case cited by the dissent bears any similarity to this case.

The trial court did not err in concluding that appellee has standing to claim protection under the Fourth Amendment.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Beasley, P. J., Cooper, Johnson and Smith, JJ., concur. Andrews and Blackburn, JJ., dissent.*

ANDREWS, Judge, dissenting.

Accepting the facts as set out in the majority opinion, I do not believe Brown had standing to contest the officer's entry into and search of the apartment and, therefore, I respectfully dissent.

There is no dispute that the apartment which Brown entered was that of Ms. J. Tabb who resided there with her children and boyfriend. Brown dated Ms. Tabb's sister and had permission to be in the apartment. This, however, does not bestow the requisite standing for purposes of asserting violation of federal Fourth Amendment rights and similar rights under the Georgia Constitution.

At most, Brown was a visitor in the apartment. " '[A]s a mere visitor . . . he had no expectation of privacy in the premises of another, where he had neither a proprietary nor a possessory interest. [Cits.]' [Cit.] 'The Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously. *Rakas v. Illinois*, 439 U. S. 128 (1) (99 S. Ct. 421, 58 L. Ed. 2d 387). And, an individual who claims he is aggrieved by an illegal search and seizure only through the introduction of evidence secured by a search of a third person's premises has not had any of his Fourth Amendment rights infringed. Id.' " *Delgado v. State*, 192 Ga. App. 356, 357 (384 SE2d 680) (1989). E.g., *Byers v. State*, 204 Ga. App. 552, 554 (1) (420 SE2d 23) (1992); *Morgan v. State*, 195 Ga. App. 732, 736 (4) (394 SE2d 639) (1990); *Rich v. State*, 188 Ga. App. 287, 288 (1) (372 SE2d 670) (1988).

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED MARCH 14, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994.

*Lewis R. Slaton, District Attorney, Samuel W. Lengen, Barry I. Mortge, Assistant District Attorneys*, for appellant.

*Allison C. Griffin*, for appellee.