A08A1040. SNIDER v. THE STATE.
(663 SE2d 805)

ANDREWS, Judge.

Michael Shane Snider appeals from the judgment of conviction entered on the trial court's verdict in a bench trial finding him guilty of possession of methamphetamine. Snider claims the trial court erred by denying his pre-trial motion to suppress methamphetamine and related evidence found by police during warrantless searches conducted in a hotel room occupied by Snider and a third party. We find: (1) that police entry into the hotel room violated the Fourth Amendment; (2) that the illegal entry tainted and rendered invalid Snider's prior consent to the searches; and (3) that the State failed to carry its burden to show that the third party's subsequent consent to search the room was untainted by the illegal entry and validated the earlier searches. Accordingly, we find that the trial court erred by denying the motion to suppress and that the conviction must be reversed.

Snider and the State stipulated to a bench trial on the evidence produced at the hearing on the motion to suppress. The evidence showed that Snider had stayed overnight at, and was still occupying, a hotel room in Carroll County along with Matt Rowe, in whose name the room was registered. A hotel clerk called the Carrollton police to report that an occupant of the room was heard talking about methamphetamine. While the two responding officers confirmed with hotel housekeepers that they heard an occupant of the room

---

[9] *State v. Aycock*, 283 Ga. App. 876 (643 SE2d 249) (2007).

making comments about where he could buy methamphetamine, the hotel clerk approached and told the officers that she saw Rowe come down the stairs from the room, see the officers, and go back upstairs. The officers went to the room and knocked on the door of the room for the purpose of investigating a suspicion of illegal drug activity. When they knocked on the door, it "kind of flew open a little bit" according to the officers, and they caught the door to prevent it from closing. The officers announced themselves as police and heard the shower running in the room's bathroom and the sound of someone in the shower. The officers pushed the door open, entered the room, and ordered whoever was in the shower to get out. One of the officers testified that he did not know at that point if an occupant had seen they were police officers and had possibly gone back to the room to get a weapon or destroy illegal drugs. At least one of the officers had drawn a weapon when they saw Snider emerge from the shower, wrap himself in a towel, and come out of the bathroom. After the officers determined that Snider was not a threat, the weapon or weapons were holstered. The officers saw no one else in the room. The officers told Snider they were there to investigate suspicions about drug activity and asked him for identification. Snider told the officers that he had identification in his pants in the bathroom, and one of the officers went into the bathroom, retrieved Snider's pants, and reached in his pants pocket and found his identification. The officer testified that she wanted Snider to put on his pants and the rest of his clothes (which were in the bathroom), but that, for officer safety, she did not want to hand him his clothes without first searching them. The officer asked Snider for consent to search the rest of his clothes, and he consented. While searching through Snider's clothes, the officer found suspected methamphetamine in one of his pockets. It is undisputed that the substance found in the search was methamphetamine. The officers arrested Snider and charged him with possession of methamphetamine. After arresting Snider, the officers testified that they also obtained Snider's consent to search his luggage, which was located in the room, and found some "small plastic baggies and tiny razors."

At some unspecified point and place after the above searches were completed, the officers met with the other occupant of the room, Rowe, and obtained his consent to search the room for any illegal drugs. The officer who gave this testimony said that he could not remember any specifics of the conversation with Rowe. Although the officer testified that he believed Rowe's consent was obtained in writing, no written consent was produced.

Claiming that the officers' entry into the hotel room was illegal under the Fourth Amendment, and that any subsequent consent to search was tainted by the illegal entry, Snider contends the trial

court should have granted his pre-trial motion to suppress the evidence found during the searches. We agree and find that the trial court erred by denying the motion to suppress.

Even though the hotel room was not registered in Snider's name, because Snider occupied the hotel room as an overnight guest, he had a constitutionally protected reasonable expectation of privacy in the room. Compare *Crisp v. State*, 195 Ga. App. 786-787 (395 SE2d 47) (1990) (defendant who was not a registered guest and showed only mere presence at the room when search was conducted had no reasonable expectation of privacy); *Floyd v. State*, 237 Ga. App. 586, 587 (516 SE2d 96) (1999) (defendant had no reasonable expectation of privacy in hotel room where he was just there to visit); *In the Interest of M. H.*, 247 Ga. App. 84, 85 (543 SE2d 390) (2000) (where defendant was neither an overnight guest nor a frequent social visitor in the room, he had no reasonable expectation of privacy); see *State v. Brown*, 212 Ga. App. 800, 802 (442 SE2d 818) (1994) (status of overnight guest at another's home is alone enough to establish reasonable expectation of privacy). Under these circumstances, the Fourth Amendment afforded Snider the same protection for the hotel room as he would have had for his private home. *Pickens v. State*, 225 Ga. App. 792, 794 (484 SE2d 731) (1997); *Owens v. State*, 236 Ga. App. 534, 535 (512 SE2d 394) (1999); *Welchel v. State*, 255 Ga. App. 556, 558 (565 SE2d 870) (2002). It follows that the officers' entry into the hotel room without consent or a warrant violated Snider's Fourth Amendment rights, unless the evidence showed that the officers had both probable cause for an arrest or search inside the room and exigent circumstances. *Welsh v. Wisconsin*, 466 U. S. 740, 748 (104 SC 2091, 80 LE2d 732) (1984); *Threatt v. State*, 240 Ga. App. 592, 595 (524 SE2d 276) (1999). We find no evidence in the record establishing probable cause for the officers to make an arrest or to conduct a search in the room. At best, the officers may have had grounds to conduct a brief investigation into possible illegal activity pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Mere speculation by one of the officers that an occupant of the room might have gone back to the room to get a weapon or destroy illegal drugs was not sufficient to carry the State's burden to show exigent circumstances. *Welchel*, 255 Ga. App. at 558-559; *Bolton v. State*, 258 Ga. App. 217, 219 (573 SE2d 479) (2002).[1]

Even though the officers illegally entered Snider's hotel room without probable cause and exigent circumstances, the State con-

---

[1] The trial court's one-sentence order denying the motion to suppress makes no findings with respect to probable cause or exigent circumstances, and gives no basis for the court's ruling.

tends that the searches conducted by the officers inside the room were valid: (1) because, after the illegal entry but prior to the searches, they obtained Snider's voluntary consent to search, and (2) because, after the searches were completed, they met with Rowe and obtained his voluntary consent to search the room. We disagree. Even without a search warrant or probable cause to obtain one, police officers may conduct a search based on an individual's voluntary consent to the search. *Galvan v. State*, 270 Ga. App. 282, 284 (605 SE2d 919) (2004). The State has the burden of proving that the consent upon which it relies was voluntary. *Raulerson v. State*, 268 Ga. 623, 625 (491 SE2d 791) (1997). When a consent to search follows an illegal entry, we examine the totality of the circumstances to determine whether the consent was voluntary because it was obtained by means sufficiently attenuated or distinguishable from the illegality to be purged of any taint, or whether the consent was invalid because it was the product of and tainted by the illegality. *Pledger v. State*, 257 Ga. App. 794, 796-797 (572 SE2d 348) (2002); *Brown v. State*, 261 Ga. App. 351, 354-355 (582 SE2d 516) (2003); *Spence v. State*, 281 Ga. 697, 700-702 (642 SE2d 856) (2007). Here, the officers illegally entered the hotel room, ordered Snider out of the shower at gunpoint, and immediately obtained his consent to search his clothes as he stood before the officers wrapped in a towel. Under these circumstances, we find that Snider's consent to search the clothes was invalid because it was the product of and tainted by the illegal entry. *Pledger*, 257 Ga. App. at 797; *Welchel*, 255 Ga. App. at 559; compare *Brown*, 261 Ga. App. at 354-355. Snider's subsequent consent to the search of his luggage, given immediately after the first consent search and after he was placed under arrest, was also invalid for the same reasons.

The State contends that, even if Snider's consent to the searches was invalid, Rowe was authorized to consent to searches in the room registered in his name, and Rowe's subsequent consent to search the entire room, given to the officers after the prior searches were completed, validated the prior searches. Even assuming Rowe had authority to consent to a search of the entire room, other than testimony that Rowe gave his consent at some point in time after the prior searches were completed, the State produced no evidence as to the circumstances of this consent. Under appropriate circumstances, the State may prove that consent to search given by a defendant (or by an authorized third party) after a search validates a prior otherwise illegal search. *Fincher v. State*, 276 Ga. 480, 481 (578 SE2d 102) (2003); *State v. Sutton*, 258 Ga. 382-383 (369 SE2d 249) (1988); *Atkins v. State*, 173 Ga. App. 9, 12 (325 SE2d 388) (1984). By relying on Rowe's consent to search the room, given after the searches in the room were completed, the State, in effect, asserts under the inevi-

table discovery exception that, even if the completed searches violated the Fourth Amendment, the evidence found should not be excluded because it would inevitably have been discovered pursuant to Rowe's subsequent consent to search, which was voluntary and untainted by the officers' illegal entry into the room. See *Teal v. State*, 282 Ga. 319, 323-325 (647 SE2d 15) (2007) (explaining application of the inevitable discovery exception to the Fourth Amendment exclusionary rule). We find that the State was not entitled to rely on Rowe's subsequent consent because it failed to produce evidence to carry its burden to prove that Rowe's consent was voluntary and untainted by the illegal entry, and that the evidence found in the prior searches was admissible under the inevitable discovery exception. *Raulerson*, 268 Ga. at 625; *Kirsche v. State*, 271 Ga. App. 729, 732 (611 SE2d 64) (2005).

*Judgment reversed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED JUNE 24, 2008.

*Allen M. Trapp, Jr.*, for appellant.
*Peter J. Skandalakis, District Attorney, David P. Taylor, Assistant District Attorney*, for appellee.