## A11A1199. THE STATE v. WOODS et al.
(716 SE2d 622)

MCFADDEN, Judge.

The state appeals the grant of Adrian Woods and Katherine Lee's motion to suppress. The state argues that neither Woods nor Lee had standing to object to the search of the motel room and the safe in which the police found cocaine; that as to Lee, the evidence should be admitted under the inevitable discovery rule; and that Woods validly consented to the searches at issue. We conclude that both Woods and Lee had a reasonable expectation of privacy in the room and the safe, so that they both have standing to object to the search. We find that the state cannot raise the inevitable discovery argument on appeal because it did not raise such an argument before the trial court. We also find that Woods's consent was not valid. We therefore affirm the trial court's grant of the motion to suppress.

We accept a trial court's ruling on disputed facts and credibility at a suppression hearing unless the ruling is clearly erroneous. See *State v. Palmer*, 285 Ga. 75, 79 (673 SE2d 237) (2009). Where the facts are not in dispute, we owe no deference to the trial court's ruling and review the ruling de novo. Id.

Six police officers, including Officer Tommy Grier, the state's only witness at the suppression hearing, went to a motel to execute a warrant for the arrest of Lee on aggravated assault charges. The officers went to the room listed on the warrant, but it was unoccupied. Grier testified that the manager said that Lee was staying in Room 214. Neither Woods nor Lee, however, was on the registry for the room. In fact, the room was registered to Lee's sister. At the hearing, the manager testified that he did not know whether Lee, a long-term resident of the motel, was staying in Room 214, but he suspected it.

The officers went to Room 214 and knocked on the door. At least one of the officers had his weapon drawn. Woods opened the door. The officers asked Woods if Lee was in the room, and he said no. They asked if they could enter the room to look for her, and Woods gave permission. As they were completing the search, a passerby mentioned that Lee was in Room 306. Most of the officers left the room, but one or two stayed with Woods to make sure he did not call Lee to warn her of the officers' arrival. At this point, the officers in the room holstered their guns.

The officers found Lee in a room on the next level of the motel and took her into custody. Ten to fifteen minutes later, Grier returned to Room 214 to speak with Woods. As he was walking into the room, another officer with Grier's unit, Officer Benjamin Griggs, recognized Woods and identified him by his street name, Blue. Griggs said that Woods had just been released from prison where he had

been incarcerated for cocaine trafficking. Grier confirmed this information with Woods and began asking him questions. Woods told Grier that he had nothing illegal in the room, that clothes hanging next to the sink were his, and that he stayed in the room. Grier then asked Woods for permission to search the room. Woods consented.

The officers began searching the room. In a drawer, they found men's underwear and socks, which Woods identified as his. They also found a picture of Woods and his son and his paperwork, including a check stub. The officers asked Woods what was in the room safe. Woods responded, "I don't know what's in the safe, but it ain't mine." Grier asked Woods if he could search the safe, and Woods responded, "Go ahead. But I don't know the combination." Grier retrieved a device for opening the safe from the manager's office. As Grier walked by, the officer who was detaining Lee told Grier that Lee had admitted that there was marijuana and crack in the safe and that it was hers.

Grier returned to the room, opened the safe and found crack cocaine and drug paraphernalia inside. Grier then arrested Woods. At some point, Woods consented to a search of his car.

The trial court ruled that Woods and Lee had standing to challenge the search of Room 214 because Lee was a resident and Woods was Lee's frequent overnight guest and kept personal items there. The court then ruled that the officers had no reason to detain Woods once they determined Lee was not in the room or at least once they had arrested her. Either way, the court held, the encounter between Woods and the police never de-escalated to a first-tier encounter, so his consent to search the room, the safe and his car was not voluntary.

1. The state raises three arguments as to why the trial court erred in suppressing the use of the evidence against Lee.

(a) First, the state argues that the trial court's finding that Lee was a resident of the motel room, and therefore had standing to object to the search, is not supported by competent evidence. It elaborates that the testimony that Lee was staying in Room 214 is hearsay.

Grier testified that the manager told the police that Lee was staying in Room 214. And the manager testified at the hearing that he suspected Lee was staying there, and that Lee and Tramell, Lee's sister and the registered guest, had stayed together before. To the extent the state argues that Grier's testimony was not competent because it was hearsay, we disagree. "As long as the declarant testifies . . . and is available for cross-examination . . . , the purpose behind the hearsay rule is satisfied with regard to his declarations." (Footnote omitted.) *Conley v. State*, 257 Ga. App. 563, 564 (1) (571 SE2d 554) (2002). Because the manager testified and was available

for cross-examination, Grier's testimony about what the manager said was admissible. Id.; *Penland v. State*, 258 Ga. App. 659, 662 (3) (574 SE2d 880) (2002). The state also argues that the manager's testimony that Lee and Tramell, the registered guest, are sisters is inadmissible hearsay. "Where a witness testifies to a conclusion of fact which could be within his knowledge and such testimony is admitted without objection, it cannot be attacked on review as being incompetent or insufficient." (Citation and punctuation omitted.) *Willingham v. State*, 296 Ga. App. 89, 90 (673 SE2d 606) (2009). See also *Floyd v. State*, 100 Ga. App. 453 (1) (112 SE2d 171) (1959) ("Unless it affirmatively appears that evidence is hearsay, and where it is of such a nature that it is possible for the witness who testifies thereto to personally know thereof, it ought not to be excluded."). It does not affirmatively appear that the manager's testimony was based on hearsay rather than personal knowledge, and during the hearing the state did not contest the fact that Lee and Tramell are sisters.

In any event, when the trial court sits as the finder of fact, we presume that the trial court "separated admissible evidence from inadmissible evidence and considered only the former in reaching its judgment." (Footnote omitted.) *Watson v. State*, 274 Ga. 689, 691 (3) (558 SE2d 704) (2002).

Given the hearing testimony, the trial court's ruling that Lee had standing to object to the search because she was a resident of the room is not clearly erroneous.

(b) The state argues that even if the detention of Woods was illegal, that does not require the suppression of the evidence from the safe as to Lee because she cannot vicariously assert a violation of Woods's Fourth Amendment rights. See OCGA § 17-5-30 (a) (1) ("A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that . . . [t]he search and seizure without a warrant was illegal."). This is merely another way of arguing that Lee lacks standing to challenge the search of the safe. See *State v. Carter*, 299 Ga. App. 3, 5-6 (681 SE2d 688) (2009). But because Lee was staying in the room, she had a reasonable expectation of privacy in the room and the safe within it, and can assert that she was aggrieved by the search within the meaning of OCGA § 17-5-30 (a) and the Fourth Amendment. Id. at 5. See also *Brown v. State*, 288 Ga. 404, 407 (2) (703 SE2d 624) (2010) (holding that consent to search premises includes consent to search washing machine on those premises).

(c) The state argues that the evidence was admissible under the inevitable discovery rule, given that the officers would have sought a warrant because of Lee's admission that the drugs were hers. See *Cunningham v. State*, 284 Ga. App. 739, 741 (644 SE2d 878) (2007)

("Under the inevitable discovery doctrine, if the [s]tate shows by a preponderance of the evidence that illegally obtained evidence would have been discovered inevitably by lawful means, the evidence is admissible."). But the state did not make this argument in the trial court, and the trial court made no ruling on an inevitable discovery theory. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal." (Punctuation and footnote omitted.) *Milton v. State*, 252 Ga. App. 149, 150 (555 SE2d 818) (2001). Because we are limited to reviewing only those grounds addressed by the trial court, the state's enumeration of a ground entirely different from the grounds it raised below presents nothing for our consideration. Id.

2. The state raises three arguments as to why the trial court should have denied Woods's motion to suppress.

(a) First the state argues that the evidence shows that Woods was merely a visitor to the motel room and therefore lacked a reasonable expectation of privacy warranting standing to challenge the search of the room. See *Watkins v. State*, 285 Ga. 107, 108 (2) (674 SE2d 275) (2009). It points to the facts that Woods was not the registered guest of the room, he had no key, and he had only Lee's permission to sleep there.

Given the evidence that Woods stayed in the room and had belongings there, the trial court's ruling that Woods had an expectation of privacy in the room is not clearly erroneous. "Even though the hotel room was not registered in [Woods's] name, because [he] occupied the hotel room as an overnight guest, he had a constitutionally protected reasonable expectation of privacy in the room." (Citation omitted.) *Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008). Compare *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (because defendant was not an overnight guest of the registered guest, did not have a key to the room, and had no luggage in the room, he had no expectation of privacy in the room).

(b) The state argues that Woods abandoned any interest in the safe and therefore lacked any expectation of privacy in it.

> The question of abandonment for Fourth Amendment purposes turns on whether under the totality of the circumstances, the investigating officer reasonably believed at the time of the search that the accused had relinquished his interest in the property to such an extent that he no longer had a reasonable expectation of privacy in it.

(Citations omitted.) *State v. Browning*, 209 Ga. App. 197, 197-198 (1) (433 SE2d 119) (1993).

Grier's asking for permission to search the safe indicates that he did not believe Woods had relinquished his interest in it. Indeed, Grier testified that he believed Woods had authority to consent to a search of the safe. On this evidence, the trial court's denial of the state's claim of abandonment, implicit in its finding that Woods consented to the search of the safe, see *Smith v. State*, 264 Ga. 87, 87-88 (2) (441 SE2d 241) (1994), is not erroneous.

(c) The state argues that Woods validly consented to the searches. In order to prove valid consent, the state must prove both that the consent was voluntary and that it did not result from an illegal detention. *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002). Focusing on the detention component, the state contends that once most of the officers left the motel room to arrest Lee and the remaining officer or officers holstered their weapons, the situation de-escalated to a first-tier encounter with no Fourth Amendment implications. In any event, the state argues, the officers could ask Woods for his consent even if their encounter had not de-escalated to a first-tier encounter.

Police-citizen encounters fall into three categories: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief 'seizures' that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (Citation omitted.) *State v. Davis*, 206 Ga. App. 238 (424 SE2d 878) (1992). The state does not argue that the police had a reasonable, articulable suspicion of Woods engaging in criminal activity that would justify a second-tier seizure after Lee was arrested. Nor does it argue that police had probable cause to justify a third-tier arrest. Instead, the state argues that the initial encounter de-escalated to a first-tier encounter. The issue, then, is whether, at the time he consented, the encounter between Woods and the police was a first-tier encounter with no Fourth Amendment implications or whether it was a second- or third-tier encounter for which the police needed — but did not have — reasonable suspicion or probable cause.

To determine whether the encounter de-escalated, we "must look to the totality of the circumstances in determining whether a reasonable person would have felt free" to end the interaction with police. (Citations and punctuation omitted.) *State v. McMichael*, 276 Ga. App. 735, 737 (1) (624 SE2d 212) (2005). Some of the factors a court may consider to determine whether a police-citizen encounter

has de-escalated from a second- or third-tier encounter to a first-tier encounter include

> whether there was a clear and expressed endpoint to any such prior detention; the character of police presence and conduct in the encounter under review (for example — the number of officers, whether they were uniformed, whether police isolated subjects, physically touched them or directed their movement, the content or manner of interrogatories or statements, and "excesses" factors stressed by the United States Supreme Court); geographic, temporal and environmental elements associated with the encounter; and the presence or absence of express advice that the citizen-subject was free to decline the request for consent to search. In general, a full examination must be undertaken of all coercive aspects of the police-citizen interaction.

(Citation omitted.) Id. at 737-738.

There is no evidence indicating that the detention of Woods de-escalated to a first-tier encounter once the police had arrested Lee, as the state contends. There was no clear endpoint to the initial detention that would indicate to Woods that he was free to end the interaction with the police; once Lee was arrested, nothing changed except that more officers entered the motel room and began questioning Woods. Further, the encounter continued in the place it began, Woods's motel room. Finally, there is no evidence that the police advised Woods that he was free to decline the request for consent to search. Under these circumstances, we conclude that the trial court did not err in finding that the encounter did not de-escalate.

The state points to the fact that the officers had holstered their weapons, but Grier's testimony was that they holstered their weapons *before* they arrested Lee but while Woods was detained to prevent his contacting her. "The absence of certain coercive factors at the time of the additional questioning is not persuasive where those factors were absent at the time of the initial seizure." *Daniel v. State*, 277 Ga. 840, 843 (2), n. 2 (597 SE2d 116) (2004), overruled in part on other grounds, *Salmeron v. State*, 280 Ga. 735, 736-738 (1) (632 SE2d 645) (2006).

Similarly, the state argues that once most of the officers left the room, the encounter de-escalated. But even once most of the officers left the room, the remaining officer or officers detained Woods to prevent his contacting Lee, so the departure of some of them did not de-escalate the encounter to a first-tier encounter. And because the state had neither a reasonable, articulable suspicion of Woods

engaging in criminal activity that would justify a second-tier seizure nor probable cause to justify an arrest, the detention was illegal. Because the state did not prove that Woods's consent did not result from an illegal detention, it cannot justify the warrantless search on the ground of consent. *Pledger*, supra at 800.

The state also argues that Woods's detention was justified because the police saw a small amount of smoked marijuana in an ashtray when they first entered the room. Grier's testimony does not indicate when the officers saw the marijuana. And his testimony makes clear that the officers did not rely on the discovery of the marijuana to detain Woods. Indeed, in its closing argument, the state asserted that the police saw the marijuana while Woods was being detained after Woods had given his consent to search the room. Post-seizure events cannot justify, after the fact, a detention that was unreasonable when it occurred. See *Norton v. State*, 283 Ga. App. 790, 793-794 (2) (643 SE2d 278) (2007); *State v. Combs*, 191 Ga. App. 625, 628 (2) (382 SE2d 691) (1989) (physical precedent only).

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 1, 2011 — ▮

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Kenya K. Johnson, Assistant District Attorneys,* for appellant.
*Larry D. Wolfe, Dennis C. Francis, Jr.,* for appellees.