**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 24, 2012**

# In the Court of Appeals of Georgia

A12A1159. THE STATE v. HAMBY et al.

MIKELL, Presiding Judge.

The State appeals the trial court's grant of the motions to suppress marijuana and cocaine filed by co-defendants Kathy L. Hamby and Newman Clark Smith.[1] For the following reasons, we affirm.

---

[1] Three hearings were held on the motions to suppress. Following the first two, the trial court orally announced that he was denying the motions. No written order to this effect was ever entered. Thereafter, the case was reindicted and assigned to another judge who, following the third hearing, granted the motions and entered the order appealed.

> A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. Although a trial court's oral pronouncements on the record may provide insight on the intent of its subsequent written judgment, discrepancies between the two pronouncements must be resolved in favor of the written judgment. Thus, the [trial] court's oral statements on the record were not binding.

(Citations omitted.) *In the Interest of L. H.*, 242 Ga. App. 659, 660 (2) (530 SE2d 753) (2000). See also *Williams v. City of LaGrange*, 213 Ga. 241, 242 (1) (98 SE2d 617) (1957).

At a hearing on a motion to suppress, the trial judge sits as the trier of fact.[2] In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.[3]

So considered, the evidence shows that, close to midnight on July 7, 2008, Roswell Police Officer Orrick was patrolling the highest crime area in Roswell where Studio 6, an extended stay hotel, was located. As he was driving through the parking lot of the hotel, he encountered Hamby, who waved at him. Orrick, in uniform, rolled down the passenger window of his marked police car and started talking with Hamby, who said she was staying there with her husband. Orrick advised her of recent robberies in the area and that she should be careful and remove any valuables from her vehicle. Hamby told Orrick that her name was Kathy Lynn Simms and gave him her birth date. Orrick wrote down the name and, as he was driving away, ran it through G.C.I.C. to check for outstanding warrants. The system reflected that this

---

[2] *Page v. State*, 296 Ga. App. 431 (1) (674 SE2d 654) (2009).

[3] (Citation and punctuation omitted.) *Self v. State*, 245 Ga. App. 270, 272-273 (2) (537 SE2d 723) (2000).

driver's name was not on file, which indicated to Orrick that this was a false name. Orrick turned around, encountered Hamby, and again asked her for her name and date of birth. Hamby gave Orrick the same information and told him that she did have a driver's license in her hotel room and that Orrick could follow her to the room and she would get it.

Before Orrick and Hamby arrived at the hotel room, two other officers had come to assist Orrick. When they arrived at the room, Hamby told Orrick her husband was inside and Orrick knocked on the door. Smith opened the door, wearing only a tee shirt and shorts. Orrick noticed that the air conditioning was on high and that really cold air was coming out of the room. Despite the cool temperature, Smith was sweating, his pupils were dilated, and he was licking his lips. These facts raised Orrick's suspicion that Smith was using a central nervous system stimulant, such as cocaine. Orrick asked Hamby where her identification was located and she indicated her purse on the kitchen table. Orrick asked Smith to bring the purse to him and Smith got the purse, but appeared to remove an item from it and then he appeared to be covering something up on the table. Orrick told him to stop making movements and bring him the purse. Smith started toward Orrick, but at one point stopped, turned his back, and again began to rifle through the purse. At that point, Orrick "stepped inside

3

the doorway" because he feared Smith was searching for a weapon, and told Smith to stop, which he did. Hamby did not find her identification in her purse, but told Orrick it might be in a piece of red luggage on the floor inside the doorway. At this point, all three police officers were "just inside the door frame." Orrick asked Hamby if he could search this luggage and she acquiesced. No identification or illegal items were found.

Orrick had noticed three zipper bags on the kitchen table and he pointed to them and asked if Hamby's identification could be in any of those. Both Hamby and Smith said they had no knowledge of those bags and they were not theirs. Regarding the bags as abandoned, Orrick began walking across the room to retrieve them, when he spotted a sandwich bag on the floor which contained marijuana. In one of the bags on the table, Orrick found five more bags of marijuana and in another he found a red glass smoking pipe commonly used for smoking methamphetamine. As he was walking back toward his sergeant, Orrick noticed an open bag on the bed with a lot of prescription bottles in it. When asked, Smith claimed the bag and consented to Orrick's search of it. Orrick found an STP oil can in the bag and noticed that its false bottom was partly unscrewed. Inside, he found three packages of cocaine.

The State argues that Smith and Hamby "did not have a reasonable expectation of privacy in the abandoned property that was visible in plain view from the doorway of their hotel room and Appellee Smith gave consent to search the bag located on the bed as well as the rest of the room."

The State concedes that Hamby and Smith had a constitutionally protected reasonable expectation of privacy in their hotel room.[4] As the trial court found, Orrick's two conversations with Hamby were appropriate first tier encounters between police and citizen.[5]

The argument of the State overlooks the issue of the entry of the three officers into the occupied hotel room without either probable cause, exigent circumstances, or consent. At the time Orrick went across the room to retrieve what he deemed to be abandoned three bags on the kitchen table, the most he had was a reasonable suspicion that Hamby had given a false name and that Smith might be under the influence of cocaine. At that point, no illegal substances had been seen by the

---

[4] *Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008). Cf. *State v. Woods*, 311 Ga. App. 577, 578 (1) (a) (716 SE2d 622) (2011).

[5] *Ware v. State*, 309 Ga. App. 426, 427-428 (710 SE2d 627) (2011).

officers, nor had any consent been given for their entry into the hotel room, as conceded by Orrick. Orrick acknowledged that he had not asked Smith or Hamby if they had had visitors to their room before retrieving the bags. He further acknowledged that "I don't know if he [Smith] ever gave us permission to go into the room." It was on his way to retrieve the bags that he noticed the baggie containing marijuana on the floor of the room.

The State relies on the consent of Smith to search his bag on the bed in order to overcome the initial illegality of their entering the room without permission.

"The State has the burden of proving the validity of a consensual search and must show the consent is given 'voluntarily.' Consent which is the product of coercion or deceit on the part of the police is invalid. Consent is not voluntary when it is the result of duress or coercion, express or implied."[6] Voluntariness of consent is determined by the totality of the circumstances using the standard of objective reasonableness.[7] The inquiry is whether a reasonable person would feel free to decline the request to search or otherwise terminate the encounter.[8]

---

[6] (Citations, punctuation and footnote omitted.) *State v. Jourdan*, 264 Ga. App. 118, 120-121 (1) (589 SE2d 682) (2003). See also *State v. Woods*, supra at 581 (2) (c).

[7] Id. at 121.

[8] Id.

6

If the trial court had, in writing, denied the motions to suppress, our analysis would be quite different. We might have affirmed that ruling, just as we affirm the decision which was in fact made. As always with this type case, we are not ruling that the trial court was required to reach the decision it did, but merely ruling that, as a matter of law, the decision the trial court did reach is permitted under Georgia and federal law.

Here, three uniformed officers had stepped into the hotel room without permission and Orrick directed Smith to retrieve Hamby's purse, to stop moving around, and asked about the luggage and other bags in the room. Just because, following Orrick's further entry into the room to retrieve the three unclaimed bags, Smith acquiesced in Orrick's request to search his bag does not fulfill the state's burden to show that the consent was voluntary.[9] Therefore, we affirm the trial court's grant of Hamby's and Smith's motions to suppress.

*Judgment affirmed. Miller and Ray, J.J. concur.*

---

[9] Id. (mere acquiescence to the authority asserted by a police officer cannot substitute for free consent). Compare *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003) (voluntary consent given an hour after initial improper entry into the curtilage cured any defect in the warrantless entry).

7