**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**April 24, 2013**

# In the Court of Appeals of Georgia

A13A0653. THE STATE v. ABLE et al.

DILLARD, Judge.

The State appeals the trial court's grant of Catherine Lindsey Able and Tyler Bridges Selph's joint motion to suppress evidence, contending that the trial court erred by basing its decision solely on a dislike of police officers' "knock and talk" procedures. Because we agree that the trial court erred in its basis for granting the motion to suppress, we vacate the trial court's order and remand for reconsideration.

At the outset, we note that at a hearing on a motion to suppress, "the trial judge sits as the trier of fact."[1] And when this Court reviews the grant or denial of a motion to suppress, we must construe the evidence "most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and

---

[1] *State v. Hamby*, 317 Ga. App. 480, 481 (731 SE2d 374) (2012).

credibility must be adopted unless clearly erroneous."[2] However, we owe "no deference to the trial court's conclusions of law" and are instead "free to apply anew the legal principles to the facts."[3]

So viewed, the record reflects that law enforcement received an anonymous complaint that Able and other individuals were smoking marijuana in a specific Cartersville apartment. Four officers responded to the address to conduct a so-called "knock and talk" because, admittedly, they did not have a sufficient basis to request a search warrant. While the other three officers waited on a nearby flight of stairs, one officer approached the door and knocked. One or two minutes later, Able opened the door about six inches, wide enough to peer out.

After Able opened the door, the officer identified himself and indicated that he wished to come inside and speak with the occupants. The officer testified that as soon as the door opened, he could smell a strong odor of burning marijuana from within the apartment, and that after he introduced himself to Able, she stepped back from the door and indicated or motioned for him to enter.

---

[2] *Id.*

[3] *Martin v. State*, 316 Ga. App. 220, 220 (729 SE2d 437) (2012) (punctuation omitted).

Once inside the apartment, the officer observed three other individuals in the apartment's living room and instructed his colleagues to collect identification from them. When one of the individuals inquired as to what was happening, the officer responded that "it was pretty obvious that [the officers] smelled marijuana." Able then motioned toward the coffee table and told the officer that it contained marijuana, at which point the officer noticed the contents of an open drawer: a cellophane bag holding marijuana, a metallic grinder containing marijuana, and an ashtray with remnants of burnt marijuana. As a result of the foregoing, all four occupants of the apartment were arrested and searched, during which officers found additional marijuana and digital scales on Selph's person.

Thereafter, Able and Selph were indicted for possession of less than one ounce of marijuana, and shared defense counsel. They then filed a joint motion to suppress the evidence discovered as a result of the knock and talk, contending that it was an illegal search and seizure under the Fourth Amendment of the United States Constitution.[4] And at the motion-to-suppress hearing, defense counsel argued that the officers lacked the necessary consent to enter the residence.

---

[4] The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

The trial court granted the motion to suppress, but made no findings of fact or conclusions of law—either in its written order or in the hearing transcript—as to whether law enforcement received consent to enter the apartment. Instead, the hearing transcript contains nearly four pages in which the trial court expounds upon its general dislike for knock-and-talk procedures, including the following:

> [The testifying law enforcement officer] will tell you, as a drug prosecutor, there was one thing in this world that I hated. . . . Knock and talk. I do not like knock and talks because knock and talks encroach upon the very essence of why the Fourth Amendment exists and that is, encroaching upon a person's doorstep with evidence . . . less than able to get you a search warrant . . . . What kind of society do we become when we can be encroached upon on our front doorstep simply because someone anonymously calls a police officer and doesn't bother to leave a name or a number of any kind of verifiable evidence of where their knowledge comes from. That's why I don't like knock and talks because, most of the time, they're not built upon anything that is really verifiable. . . . And I taught this to [law enforcement] when I was a drug prosecutor; I don't like knock and talks; I think they're dangerous; I think they set up a bad public policy . . . .

The only conclusion we can draw from the foregoing commentary (and from an otherwise silent appellate record)[5] is that the trial court granted the motion to suppress simply because the officers conducted a knock-and-talk investigation based upon an anonymous third-party tip. Indeed, the trial court explained that because the facts involved "basically people inside a house [sic] with no appearance of any impropriety on the outside of this apartment," he did not believe the procedure was proper and that "doing something like this in this situation[ ] sets a bad precedent."

---

[5] The following constitutes the entirety of the trial court's order granting the defendants' motion to suppress:

> This matter having come on for hearing on August 21, 2012 on Defendant's [sic] Motion to Suppress, and the Court having received the evidence and testimony of the parties, it is hereby ORDERED as follows:
>
> Defendants' Motion to Suppress is GRANTED.
>
> It is hereby ORDERED that any evidence obtained by virtue of the search and seizure in this matter is suppressed. The District Attorney, his agents, police officers and other witnesses called by the State to testify against the Defendants in the above case are hereby be [sic] enjoined and restrained from mentioning, alluding to, identifying, or otherwise calling the attention to the jury of the existence of said contraband.
>
> So Ordered, this 10th day of September, 2012.

The State contends on appeal that the trial court erred in granting the motion to suppress based on its general dislike for knock-and-talk procedures and in concluding that the officers did not have the right to use such procedures. We agree.

Although the trial court forcefully expressed its disdain for knock-and-talk procedures, such measures are unquestionably constitutional—as the Supreme Court of the United States recently reaffirmed.[6] Indeed, despite the trial court's obvious discomfort with the anonymous nature of the tip that led law enforcement to Able's

---

[6] *See Florida v. Jardines*, __ U.S. __ (II) (B) (133 SCt 1409) (2013) ("Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." (citation and punctuation omitted)); *see also Kentucky v. King*, __ U.S. __ (III) (D) (131 SCt 1849, 179 LE2d 865) (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak."); *Walker v. State*, 314 Ga. App. 67, 71 n.3 (722 SE2d 887) (2012) ("The deputy was entitled to approach the apartment, knock on the door, speak with the occupants at the doorway, and request identification even if he did not have reasonable suspicion at that point, given that these actions did not go beyond a first-tier consensual encounter."); *Galindo–Eriza v. State*, 306 Ga. App. 19, 22 (1) (701 SE2d 516) (2010) (officer's attempt to conduct "knock and talk" at residence constituted permissible first-tier encounter); *State v. Ealum*, 283 Ga. App. 799, 801 n.2 (643 SE2d 262) (2007) (officers were legally entitled to approach home and speak with occupant at front steps, given that the officers "were merely taking the same route as would any guest or other caller" (punctuation omitted)); *Pickens v. State*, 225 Ga. App. 792, 793-94 (1) (a) (484 SE2d 731) (1997) (police officer did not need articulable suspicion to knock on hotel room door and ask occupant for identification).

6

doorstep, "knocking on the outer door of a residence for the purpose of investigating a reported crime is not violative of the Fourth Amendment."[7] This is true even when the information is provided by an anonymous tipster.[8] Instead, the trial court's proper focus should have been on whether Able gave valid and voluntary consent for the officers to enter the apartment.[9]

---

[7] *Bryan v. State*, 271 Ga. App. 60, 63 (2) (608 SE2d 648) (2004) (punctuation omitted); *see State v. Schwartz*, 261 Ga. App. 742, 744 (1) (583 SE2d 573) (2003) ("Undoubtedly, an officer may knock on the outside door of a home without implicating the Fourth Amendment."); *Strozier v. State*, 244 Ga. App. 514, 515 (535 SE2d 847) (2000) ("[W]hen a police officer enters private property only to the extent of knocking on outer doors, the Fourth Amendment is not violated. After all, such an officer is merely taking the same route as would any guest or other caller." (punctuation omitted)); *see also Galindo-Eriza*, 306 Ga. App. at 22 (1) ("[T]he evidence supports a finding that the police officers' attempt to initially conduct a 'knock and talk' at the Norcross residence constituted a permissible first-tier encounter.").

[8] *Pickens*, 225 Ga. App. at 793 (1) (a) (holding that, despite complaint that information from anonymous tipster lacked sufficient "indicia of reliability" to justify approaching defendant's motel room, law enforcement's approach to defendant's residence did not implicate the Fourth Amendment because there was no "stop").

[9] *See Brown v. State*, 261 Ga. App. 351, 353 (1) (582 SE2d 516) (2003) ("To justify a warrantless search on the grounds of consent, the State must prove the consent was voluntary under the totality of the circumstances."); *Buckholts v. State*, 247 Ga. App. 697, 699 (2) (545 SE2d 99) (2001) ("Generally, a search based on voluntary consent eliminates the need for a search warrant or probable cause."); *see also State v. Pando*, 284 Ga. App. 70, 72 (1) (a) (643 SE2d 342) (2007) (upholding trial court's grant of motion to suppress when, *inter alia*, State failed to show that homeowner gave consent for law enforcement to enter during "knock and talk"

Suffice it to say, it is not the role of a judge to "interpret" constitutional or statutory provisions through the prism of his or her own personal policy preferences.[10] A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts.[11] And in failing to adhere to these constraints, the trial court clearly erred.

---

procedure); *Pledger v. State*, 257 Ga. App. 794, 798 (572 SE2d 348) (2002) (holding that State failed to carry burden of showing that law enforcement had lawful consent to be in home).

[10] *See Osborn v. Bank of the U.S.*, 22 U.S. 738, 866 (1824) (Marshall, C.J.) ("Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law.").

[11] *See Hendry v. Hendry*, 292 Ga. 1, 2-3 (734 SE2d 46) (2012) (explaining that "[w]hen we consider the meaning of a statute, we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning," and that "[a]s we look to the words of a statute, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears" (citations and punctuation omitted)); *State v. Smith*, 308 Ga. App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.").

Accordingly, we vacate the trial court's order granting the motion to suppress and remand the case for the trial court to consider whether Able consented to the officers' entry into the apartment after the initial encounter.[12]

*Judgment vacated and case remanded. Andrews, P. J., and McMillian, J., concur.*

---

[12] *See Pollard v. State*, 265 Ga. App. 749, 751 (2) (595 SE2d 574) (2004) ("Whether consent was voluntarily given generally is a question of fact for the trial court. The trial court should consider the totality of the circumstances . . . ." (footnote omitted)).