Charlton Paul GREEN, Petitioner,

v.

State of GEORGIA; Brian Owens, Commissioner of the Georgia Department of Corrections, Respondents.

Civil Action No. 1:11–CV–4544–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Sept. 12, 2014.

---

5. These expenses were represented as being    for the Smart children.

Stephen R. Scarborough, Stephen R. Scarborough, Attorney at Law, Atlanta, GA, for Petitioner.

Paula K. Smith, Office of State Attorney General, Atlanta, GA, for Respondents.

## ORDER

AMY TOTENBERG, District Judge.

In 1997, Petitioner Charlton Paul Green pled guilty to committing sodomy in violation of a Georgia statute that, since then, has been rendered largely unconstitutional by the Georgia Supreme Court and the United States Supreme Court. Nonetheless, the State of Georgia demands that Mr. Green register as a sex offender for this sodomy violation. Mr. Green failed to do so, and in May 2009, he was convicted in the Superior Court of Cherokee County for failing to register as a sex offender. He now petitions this Court for a writ of habeas corpus, to release him from his sentence for failing to register as a sex offender.

On December 9, 2013, the Court granted Mr. Green's petition for a writ of habeas corpus (the "Petition"), holding that his counsel rendered ineffective assistance when he failed to object to the use of the sodomy conviction in the prosecution of Mr. Green's sex offender registration violation. The State of Georgia appealed. Without addressing the merits of Mr. Green's Petition, the Eleventh Circuit Court of Appeals vacated this Court's Order granting Mr. Green's Petition. The court explained that district courts must resolve all claims for relief raised in a petition brought under 28 U.S.C. § 2254, "regardless of whether habeas relief is granted or denied." *Green v. State,* 570 Fed.Appx. 893 (11th Cir.2014) (quoting *Clisby v. Jones,* 960 F.2d 925, 936 (11th Cir.1992) (en banc)). The Court remanded the case for consideration of Mr. Green's two other bases for habeas corpus relief: that the use of the sodomy conviction to obtain the instant conviction denied Mr. Green substantive and procedural due process.

The Court again concludes that Mr. Green is entitled to a writ of habeas corpus because his attorney provided ineffective assistance at trial. The Court rejects Mr. Green's remaining arguments for relief. Thus, as more thoroughly explained below, the Court **GRANTS** Mr. Green's Petition.

## I. OVERVIEW

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R & R") [Doc. 15] and

Petitioner Charlton Paul Green's objections thereto [Doc. 17]. The Magistrate Judge recommends that the Petition be denied and dismissed. Based on the "unusual circumstances" involved, however, the Magistrate Judge further recommends that a certificate of appealability be granted.

Green timely filed his objection to the Magistrate Judge's R & R. This Court's review of the Magistrate Judge's R & R is *de novo*, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

Green raises two questions. The first is whether a 1999 conviction for private consensual sodomy between two men who had each reached the age of consent (a 16 year old and a 20 year old)[1] could be used in 2009 to prove a violation of O.C.G.A. § 42–1–12, the Georgia statute that requires registration as a sex offender. Because in 2009 it was clear under both the Georgia and the Federal Constitution that private consensual sodomy cannot be criminalized, the answer is no. The second question is whether this Court has jurisdiction to provide relief to Green under the terms of 28 U.S.C. § 2254. Although the route to relief under the Great Writ has become hedged by the Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA) so as to be blockaded under many circum-stances, this case falls squarely within an established avenue authorizing relief.

## II. BACKGROUND

In 1997, in the Superior Court of Pickens County, Charlton Green pled guilty to committing sodomy in violation of O.C.G.A. § 16–6–2.[2] His violation arose out of a consensual sexual act with another man in a private hotel room while two friends were present. (Pet. Writ Habeas Corpus Ex. 2, Doc. 1–2; Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 15–18, Doc. 5–3.) He was initially sentenced as a first offender. (Tr. May 7, 2009 Bench Trial at 76–78, Doc. 5–1.) After violating the terms of his probation, he was ultimately convicted and sentenced on the sodomy count and related offenses in January 1999.[3] *See Green v. State*, 303 Ga.App. 210, 692 S.E.2d 784, 784–85 (2010), *cert. denied*, 2010 Ga. LEXIS 717 (2010).

In 1986, O.C.G.A. § 16–6–2, the Georgia statute that criminalized sodomy, survived an attack under the Federal Constitution. *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Twelve years later, relying solely on the Georgia Constitution, emphasizing that it provided more extensive protection than did the Federal Constitution, and noting "the rich appellate jurisprudence in the right of pri-

---

**1.** The age of consent in Georgia, as reflected in the statute creating the crime of statutory rape, is 16. O.C.G.A. § 16–6–3(a). The Georgia Supreme Court has also clarified in a case involving two 16 year olds, that "the Georgia Constitution protects from criminal sanction private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent." *In re J.M.*, 276 Ga. 88, 575 S.E.2d 441, 442 (2003) (reversing a conviction under Georgia's fornication statute, O.C.G.A. § 16–6–18) (citing *Powell v. State*, 270 Ga. 327, 510 S.E.2d 18 (1998)). The Court recognizes that Georgia's sex offender registration code section defines a "minor" as "any individual under 18 years of age and any individual that the sexual offender believed at the time of the offense was under the age of 18 years if such individual was the victim of an offense." O.C.G.A. § 42–1–12(a)(14). The definition of minor in the registration statute, however, only comes into play once an independent sex offense crime has been proven.

**2.** The indictment on its face alleges only a violation of O.C.G.A. § 16–6–2(a)(1), that is, consensual sodomy. (*See* Doc. 1–2 at 6.)

**3.** Noting that using the 1997 date of plea would not change the analysis, this Order uses the 1999 adjudication date used by the Georgia Court of Appeals. (Doc. 5–1 at 76.)

vacy" that developed in Georgia in the wake of *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 50 S.E. 68 (1905),[4] the Georgia Supreme Court held O.C.G.A. § 16–6–2 unconstitutional "insofar as it criminalizes the performance of private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent." *Powell v. State,* 270 Ga. 327, 510 S.E.2d 18 (1998). In 2003, the United States Supreme Court overruled *Bowers* and held that a Texas statute that criminalized private consensual sodomy between adults violated the Due Process Clause of the Federal Constitution. *Lawrence v. Texas,* 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). *Bowers,* the Supreme Court held, "was not correct when it was decided, and it is not correct today." *Id.*

In May, 2009, Green was convicted in the Superior Court of Cherokee County of failing to register as a sex offender; it is this conviction that he challenges here.[5] The 1999 sodomy conviction was the sole basis for the determination that he is a sex offender and is therefore subject to the registration requirement imposed by O.C.G.A. § 43–1–12. (*See* Tr. May 7, 2009 Bench Trial at 5, Doc. 5–1 (noting that the only qualifying offense requiring registra-

tion as a sex offender is Green's 1999 conviction); *see also* Indictment Case No. 08CR1299, Doc. 19–2.) He was sentenced to 30 years, two to serve and the balance on probation. (Tr. May 7, 2009 Sentence at 2, 5–6, Doc. 5–2; May 7, 2009 Bench Trial at 59–60, Doc. 5–1.) Green now asserts that because the sodomy conviction penalizes conduct that cannot, as a constitutional matter, be criminalized, it cannot be used as proof of a criminal offense to support a conviction under the registration statute. (Petitioner's Br. Supp. Pet. Writ Habeas Corpus at 10–16, Doc. 8.) Green's trial counsel failed to make this argument during trial. (*See* Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 48–49, Doc. 5–3.)

After his 2009 conviction in Cherokee County for failing to register as a sex offender, Green retained new counsel and filed a motion for new trial.[6] He argued that the evidence was insufficient, contending that "the state failed to prove that he is required to register as a sexual offender because under *Powell v. State* and *Lawrence v. Texas,* consensual sodomy is no longer a crime." *Green,* 692 S.E.2d at 784. He also argued that his trial counsel was ineffective for not raising this issue at trial, that is, for not challenging the use of the sodomy conviction as the underlying

---

4. "The *Pavesich* decision," the Georgia Supreme Court noted, "constituted the first time any court of last resort in this country recognized the right of privacy." *Powell,* 510 S.E.2d at 21.

5. Green testified that he failed to register simply because he forgot. (Tr. May 2009 Bench Trial at 27–29, Doc. 5–1.) At that time, he was staying in his family home with his mother who suffered from cancer and whom he was assisting. (*Id.* at 38–39.) Green's mother testified that Green had learning disabilities, a hearing impairment, and a spatial impairment. (*Id.* at 39.) These disabilities, according to his mother, made it difficult for Green to remember things. (*Id.* at 39–40.)

6. Plaintiff's retained counsel during the 2009 trial was Michael Bierman. (*See* Tr. May 7, 2009 Sentence at 6, Doc. 5–2.) His retained counsel on his Motion for New Trial, appeal of the Cherokee County Superior Court decision denying that Motion, and his subsequent motion filed in Pickens County Superior Court to vacate his underlying sodomy conviction was Stephen R. Scarborough, the same counsel representing Green in this Petition for Writ of Habeas Corpus. (*See* Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 76–77, Doc. 5–3; Notice of Filing, Doc. 21.) *See Green v. State,* 303 Ga.App. 210, 692 S.E.2d 784 (2010).

crime that required registration. *Id.* The trial court denied the motion for new trial.[7] (Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 76–77, Doc. 5–3.)

Addressing the contention that trial counsel had been ineffective, the Georgia Court of Appeals affirmed denial of relief on March 26, 2010. According to the court, pretermitting whether Green could show cause as required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), he could not show prejudice. The court held that he had not shown "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Green,* 692 S.E.2d at 787. The Court of Appeals explained, "At the hearing on the motion for new trial, the alleged victim in the sodomy case testified that his sexual encounter with Green occurred in a hotel room; that it was consensual; that two girls were also in the room; that they were just 'partying ... getting into stuff they shouldn't have....'" *Id.* Green had not shown prejudice, the Court of Appeals ruled, because after having considered the evidence and the arguments of counsel, the trial court "acknowledged that *Powell* and *Lawrence* had changed the law but concluded that those changes do not apply to his factual situation because the conduct was not 'private,' given the presence of other people in the room." *Id.* The trial court also "noted that Green still had a conviction on his record that required him to register and that no constitutional challenge to that conviction had been made,"

and "relied on the fact that Green waived his defenses when he pled guilty" presumably referring to Green's plea of guilty to the underlying sodomy charge. *Id.* The Cherokee County Superior Court recognized that perhaps Green could seek relief from his underlying conviction in Pickens County or via a habeas petition, but found no basis to grant his motion for new trial on the registration offense. (*See* Tr. Sept. 9, 2009 Mot. New Trial Hrg. at 70–71, 74–45, Doc. 5–3.)[8]

In September 2009 while Green's appeal from the denial of his motion for new trial was still pending, Green followed the Cherokee County Superior Court's suggestion and filed a "Motion to Pronounce a Valid Judgment" in Pickens County Superior Court. (*Id.* at 74–75.) Pickens County Superior Court Judge Brenda Weaver granted his motion and vacated the sodomy conviction. Judge Weaver addressed Green's constitutional argument head-on and held "that the undisputed evidence supports Mr. Green's claim to the protections of *Powell* and *Lawrence.*" (Mar. 10, 2010, Pickens Cnty. Ord. at 7, Doc. 21–1.) She first recognized that the constitutional protection of *Powell* and *Lawrence* only applies to "sexual activity that is private, consensual, non-commercial, and between person above the age of consent." (*Id.*) She easily found that the sexual conduct met the last three factors. (*Id.*) Then, considering the same evidence in the record that was before the Cherokee County trial court,[9] Judge Weaver held that the

7. On appeal, the Georgia Court of Appeals recognized that both *Powell* and *Lawrence* create a new rule of substantive criminal law and must be applied retroactively. *Id.* at 786. Nonetheless, that court ruled that because Green's conviction of sodomy had not been vacated at the time he was tried for failure to register as a sex offender, his conviction for failure to register was valid. *Id.* That issue is addressed *infra.*

8. The Court discusses the Cherokee County Superior Court's ruling in more detail below.

9. The parties stipulated that the 2009 Cherokee County testimony of the other man involved in the 1999 sodomy act would become part of the record before the Pickens County Superior Court. (Mar. 10, 2010, Pickens Cnty. Ord. at 3, Doc. 21–1.) No party offered any additional evidence. (*Id.*)

consensual sexual conduct at issue occurred in a private place and thus was private for purposes of the constitutional right of privacy. (*Id.* at 7–8 (citing *Mauk v. State*, 242 Ga.App. 191, 529 S.E.2d 197, 198 (2000)).) Applying Georgia law, Judge Weaver reasoned that "it is the reasonable expectations of the room's occupants, and not the number of occupants, that controls" the determination as to whether a place is private. (*Id.* at 8.) And because the sexual act occurred behind the closed door of a hotel room—a place where occupants enjoy Fourth Amendment protection—the court held that such conduct could not be criminalized. (*Id.*) Thus, the first court to directly address the validity of the underlying sodomy conviction found it invalid.

On February 22, 2011, the Georgia Court of Appeals reversed on procedural grounds the Pickens Superior Court's decision to vacate Green's sodomy conviction. *Id.* ("[B]ecause a motion to vacate a judgment of conviction is not an established procedure for challenging the validity of a judgment in a criminal case, Green was not authorized to seek relief from his conviction pursuant to such a motion."). Thus, as it stands, Green remains on probation for violating the reporting requirement of O.C.G.A. § 42–1–12, a requirement imposed upon him because of his conviction under a sodomy law that has been deemed largely unconstitutional. On that basis, he petitions for a writ of habeas corpus.

**III. ANALYSIS**

On December 28, 2011, Green filed this petition for a writ of habeas corpus raising three claims: (1) that the use of the sodomy conviction in his prosecution for failing to register violated his right to proce-

dural due process; (2) that the use of the sodomy conviction in his prosecution for failing to register violated his right to substantive due process; and (3) that his counsel's failure to object to the use of the sodomy conviction in his prosecution for failing to register as a sex offender deprived him of the effective assistance of counsel. (Doc. 1.)

The constitutional claim at the heart of each of the three grounds asserted is that the 1999 sodomy conviction criminalized conduct that is beyond the power of the state to treat as criminal. Green does not, however, seek to vacate the 1999 sodomy conviction, and this Court lacks the authority to take such action here because Green is not "in custody" pursuant to the sodomy conviction. *Maleng v. Cook*, 490 U.S. 488, 490–91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).[10]

Green's arguments that his conviction for failing to register as a sex offender has denied him procedural or substantive due process—his petition's first and second grounds for relief—do not provide a sufficient basis for habeas relief under AEDPA's stringent restrictions. Because the sodomy conviction is still extant, the only ground on which Green may seek relief is his contention that his counsel's failure to object to the use of the 1999 sodomy conviction deprived him of the effective assistance of counsel.

■ The State contends, however, that even this remaining avenue—ineffective assistance of counsel—is not available, relying on *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). In *Coss*, the Supreme Court disallowed the use of 28 U.S.C. § 2254 to attack a current sentence on the

---

10. *Cf. U.S. v. Akinsade*, 686 F.3d 248 (2d Cir.2012) (involving the use of the writ of

coram nobis to attack a federal conviction).

ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. *Id.* at 400–403, 408, 121 S.Ct. 1567. The habeas petitioner in *Coss* was convicted in 1990 of aggravated assault. *Id.* at 398, 121 S.Ct. 1567. The sentencing court enhanced his sentence in part because of the petitioner's 1986 conviction for simple assault, institutional vandalism, and criminal mischief. *Id.* The petitioner sought a writ of habeas corpus arguing that the 1986 conviction—which was not susceptible to direct or collateral attack in its own right—was unconstitutionally obtained and thus could not be used to enhance his sentence. *Id.*

The Court rejected this position holding that generally, "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Id.* at 403, 121 S.Ct. 1567; *see also Daniels v. United States,* 532 U.S. 374, 384, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (applying this principle to federal convictions). Two concerns drove this decision: (1) the finality of the conviction and, in particular, the state's "strong interest in preserving the integrity of the judgment" and (2) the problem related to "ease of administration of challenges to expired state convictions." *Coss,* 532 U.S. at 403, 121 S.Ct. 1567. The Court then found that exceptions to this general principle were inapplicable and thus denied the habeas petition.

The prudential limitation on habeas relief articulated in *Coss* does not apply here. First, unlike in *Coss,* this is not a case in which a prior conviction is used as an enhancement. Rather, Green directly challenges the sodomy conviction's use to establish one of the elements of the crime

of failing to register: "[T]here is a difference between the use of a final conviction merely to increase a recidivist's sentence or to cast collateral burdens on an accused, and the deployment of a prior offense to impose a restriction on liberty that would otherwise not exist at all." (Br. Supp. Pet. Writ Habeas Corpus, Doc. 8 at 18.) *See also Jones v. Solis,* 121 Fed.Appx. 228, 230 (9th Cir.2005) (holding that *Coss* does not bar a habeas petitioner from challenging the constitutionality of the basis for his conviction for failure to register as a sex offender merely because the underlying conviction triggering the registration requirement was final).

Second, the concerns driving the decision in *Coss* are not implicated here. In *Coss,* the petitioner asked the habeas court to consider whether a former conviction was constitutionally obtained. As the Supreme Court recognized, this question would have required the court to "consult state court records and transcripts to ensure that challenged convictions were obtained in a manner consistent with constitutional demands." *Coss,* 532 U.S. at 403, 121 S.Ct. 1567. This scrupulous review becomes increasingly difficult over time. "As time passes, and certainly once a state sentence has been served to completion," the Court explained, "the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially." *Id.* Here, however, Green does not ask (nor need) the Court to substantially review state court records of his 1999 sodomy conviction, because he does not argue that his conviction was unconstitutionally obtained. He argues instead that the sodomy statute under which he was convicted criminalized conduct beyond the power of the state to punish.

Likewise, the state's interest in preserving the integrity of the 1999 conviction is

seriously diminished in the face of Georgia's clear pronouncement that the sodomy statute itself is unconstitutional. *See Powell*, 510 S.E.2d at 26. The state has little interest in the "integrity" of a conviction under a law the state itself finds "manifestly infringes upon a constitutional provision." *Powell*, 510 S.E.2d at 26 (quoting *Miller v. State*, 266 Ga. 850, 472 S.E.2d 74, 77 (1996)). The Court notes that in this case the Pickens Superior Court that convicted Green ultimately endeavored to vacate the sodomy conviction as "impos[ing] a punishment that the law does not allow." *See State v. Green*, 308 Ga.App. 33, 706 S.E.2d 720, 721 (2011) (reversing on procedural grounds without reaching the merits of the trial court's decision to vacate the sodomy conviction). On these facts, the state's interest in the integrity of the 1999 conviction is insufficient to overcome Green's right to seek habeas corpus relief.

Moreover, Green's case presents a "unique constitutional defect ... rising to the level of a jurisdictional defect, which therefore warrants special treatment among alleged constitutional violations." *Coss*, 532 U.S. at 404, 121 S.Ct. 1567. In *Coss*, the Court recognized "an exception to the general rule for § 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*." *Id.* The Court explained that "allowing an exception for *Gideon* challenges does not implicate our concern about administrative ease, as the 'failure to appoint counsel ... will generally appear from the judgment roll itself, or from an accompanying minute order.'" *Id.* at 405, 121 S.Ct. 1567 (quoting *Custis v. United States*, 511 U.S. 485, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994)). Green's challenge here is as easily evaluated by considering his indictment and the basic facts of his underlying sodomy conviction. Like the failure to appoint counsel, the use of a state statute that exceeds the state's power to criminalize conduct is a unique constitutional defect which warrants special treatment among alleged constitutional violations.[11] As Green is currently in custody pursuant to his 2009 conviction,[12] he may seek habeas review to challenge the constitutionality of that conviction.

■ Although this Court has jurisdiction to entertain this petition for relief, under 28 U.S.C. § 2254(a) a federal court may not grant habeas relief on any claim that was adjudicated on the merits in state court proceedings unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreason-

---

11. The Court recognizes that in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court held that extant convictions, even those subject to successful collateral attack under, for example, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could properly be used as a predicate for a subsequent conviction for possession of a firearm in violation of then 18 U.S.C. § 1202(a)(1) of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (possession of a firearm by a felon). *Lewis* is inapposite, however, because it relies on Congress's intent as reflected in the language of § 1202(a)(1), as well as because it involves invalidity of a conviction based on the denial of procedural protection required for a fair trial, not, as here, invalidity of a conviction because it penalized conduct beyond the state's power to criminalize.

12. Green is currently on probation for his 2009 conviction and thus satisfies the "in custody" requirement to seek habeas relief. *See Duvallon v. Florida*, 691 F.2d 483, 484 (11th Cir.1982) ("In the context of habeas proceedings, the 'in custody' requirement may also be met where a petitioner is on probation, parole or bail.").

able application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Recognizing that § 2254(d) creates a " 'highly deferential standard for evaluating state-court rulings,' ... which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (citation omitted), this Court holds that the determination of the Georgia Court of Appeals that trial counsel's failure to challenge the use of the sodomy conviction was not ineffective assistance resulted in a decision that is an unreasonable application of federal law.[13]

The Supreme Court established the prevailing standard for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show that his constitutional right to counsel has been violated, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. If a defendant establishes that counsel's performance was professionally unreasonable, he is only entitled to relief if the error affected the outcome of his case. *Id.* This is the second prong of the *Strickland* test: a petitioner must show that counsel's deficient performance was prejudicial to his defense.

To do so, a defendant must show to a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* The *Strickland* court was concerned with the "fundamental fairness of the proceeding." *Id.* at 696, 104 S.Ct. 2052. Therefore, a court reviewing counsel's performance must consider whether the result of a proceeding is unreliable due to a "breakdown in the adversarial process that our system counts on to produce just results." *Id.* Both prongs of the *Strickland* test are satisfied in this case.

The Georgia Court of Appeals erroneously determined that Green had not shown prejudice. The court turned to three comments made by the Cherokee County Superior Court on Green's motion for new trial suggesting that even if trial counsel had challenged the use of the sodomy conviction during the trial, this would not have made a difference in the trial court's ultimate decision. *Green*, 692 S.E.2d at 786–87.

First, the Court of Appeals referenced the Cherokee County Superior Court's comment that Green "had a conviction on his record that required him to register and that no constitutional challenge to that conviction had been made." *Id.* at 787. The court appears to refer to the 1999 sodomy conviction.[14] But Green's argu-

---

13. The State's brief clarifies that the State does not contest exhaustion: "Respondent does not contest exhaustion as to any grounds in the petition, as these issues were decided adversely to Petitioner in his direct appeal. Respondent reserves the right to contest exhaustion if Petitioner attempts to raise additional claims." (Doc. 4 at 2–3.)

14. The record contains no evidence of a different conviction which would trigger sex of-

fender registration requirements, and in any case, Green's 2008 indictment for failure to register was based solely on this 1999 sodomy conviction. (Indictment Case No. 08CR1299, Doc. 19–2.) Use of a different conviction to prove the elements of the crime alleged by the State would, even under modern and more relaxed rules, constitute a fatal variance between the indictment and the proof. *See, e.g., State v. Grube*, 293 Ga. 257, 744 S.E.2d 1, 4–5 (2013). Thus, the only underlying conviction

ment is not that his counsel was ineffective for failing to move to vacate the 1999 sodomy conviction; it is that he was ineffective for failure to challenge its use in 2009 to prove the element of the crime of failure to register as a sex offender. The Court agrees. The state cannot give legal effect to a conviction under an unconstitutional criminal statute. Convicting Green for failing to register as a sex offender solely because he was previously convicted under the unconstitutional anti-sodomy statute would amount to "state-sponsored condemnation" of constitutionally-protected behavior. *Lawrence*, 539 U.S. at 576, 123 S.Ct. 2472 (addressing the stigma and "collateral consequences" associated with Texas's anti-sodomy statute including the requirement that one identify a conviction under the statute on job application forms); *see also MacDonald v. Moose*, 710 F.3d 154 (4th Cir.2013) (holding that the state's anti-sodomy law was unconstitutional and thus the state cannot convict an individual for violating a criminal solicitation statute where the predicate felony is the unconstitutional anti-sodomy law).

■ Second, the trial court noted that Green waived his defenses when he pled guilty to the sodomy charge. *Green*, 692 S.E.2d at 787. While a defendant who enters a guilty plea is often said to waive defenses, a more accurate statement of the rule is that a "plea of guilty ... waives all defenses other than that the indictment charges no crime." *Nazario v. State*, 293 Ga. 480, 746 S.E.2d 109, 113 (2013) (quoting *Smith v. Hardrick*, 266 Ga. 54, 464 S.E.2d 198, 201 (1995)). In *Nazario*, a case on direct appeal, the Georgia Supreme Court recognized that "[w]here a case challenging criminal convictions is

relevant to the validity of Green's 2008 conviction for failure to register as a sex offender is Green's 1999 sodomy conviction.

properly brought before a court and the court realizes, on its own or based on the defendant's argument, that the record shows that certain convictions merged, to disregard that determination and allow the defendant to serve a sentence for a criminal conviction that has been identified as illegal and void would not comport with fundamental fairness and due process of law." *Id.* at 115. Nor does it comport with fundamental fairness and due process of law to allow a guilty plea to waive a constitutional challenge to the use of a conviction based on constitutionally protected, private consensual sexual conduct that cannot be criminalized.

Third, the Cherokee County Superior Court "acknowledged that *Powell* and *Lawrence* had changed the law but concluded that those changes did not apply to this factual situation because the conduct was not 'private.'" *Green*, 692 S.E.2d at 787. This was, again, an erroneous conclusion.[15]

"A private place is a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." *Mauk v. State*, 242 Ga.App. 191, 529 S.E.2d 197, 198 (2000); *accord Stover v. State*, 256 Ga. 515, 350 S.E.2d 577, 578 (1986). In *Mauk*, the defendant's sexual act took place in a wooded area adjacent to a public road. *Mauk*, 529 S.E.2d at 198. "The conduct could easily be seen from the road. In fact, the incident came to light when a passerby, who had just dropped his wife off at work, went by in his truck and observed [defendant] and the victim struggling." *Id.* The court held that the sexual activity did not take place in private and thus, *Powell* did not apply. *Id.* Likewise,

15. The Georgia Court of Appeals decision cites no Georgia authority to support the assertion that the conduct at issue in this case was not private.

the court in *Stover* held that a sexual encounter taking place off a dirt road in a wooded area was not a private act. There, one of defendant's companions remained nearby during the sexual encounter. *Stover*, 350 S.E.2d at 578. The victim did not consent to the sexual encounter and thus did not consent to the presence of another person during the encounter. *Id.*

Green's case is markedly different. Unlike a publicly accessible outdoor area, a hotel room is not a public place. *See Minnesota v. Olson*, 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (recognizing that a hotel room is a private place); *Stoner v. State of Calif.*, 376 U.S. 483, 489–90, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) ("No less than a tenant of a house, or the occupant of a room in a boarding house, [cit] a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); *Snider v. State*, 292 Ga.App. 180, 663 S.E.2d 805, 807–808 (2008). The sexual act occurred in a private hotel room with no open doors or windows leading to a public area. (Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 16, Doc. 5–3.) The private nature of this place left no risk that an innocent member of the public would likely be subjected to the private sexual acts involved in this case. *See, e.g., People v. McNamara*, 78 N.Y.2d 626, 578 N.Y.S.2d 476, 585 N.E.2d 788, 793 (1991) (holding that "public lewdness" occurs where "the objective circumstances establish that lewd acts committed [in a place] can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect"); *People v. Lino*, 447 Mich. 567, 527 N.W.2d 434, 449 (1994) (Levin, J., concurring) ("A couple who

drive out to a secluded 'lover's lane' and engage[ ] in sexual conduct should not be said to have committed an act of gross indecency in a public place if a lost hiker happens to stumble across them."). And the presence of two private, consenting observers does not transform the private act into a public one. Here, the two women present in the hotel room during the sexual act were not random members of the public but personal friends. (Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 16–18, Doc. 5–3.) While the Court recognizes that the presence of others might, in a case like *Stover*, be relevant to the question of whether sexual conduct is private, the constitutional right to privacy of young adults engaging in consensual sexual conduct [16] behind the closed doors of a hotel room is not vitiated by the simple fact that four people are in the room.

In addition, the Court notes that to the extent retroactivity is an issue, the proscriptions of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), are inapposite. *Teague* considers the retroactivity of newly announced rules of constitutional procedure; this case involves the exceptional circumstance singled out by Justice Harlan in his concurrence in *Mackey v. United States*, 401 U.S. 667, 692–93, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971):

> New "substantive due process" rules, that is, those that place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, must, in my view, be placed on a different footing. As I noted above, the writ has historically been available for attacking convictions on such grounds.

**16.** As noted above in note 1, although some Georgia statutes define "adult" as someone 18 or older, the legal age of consent for purposes of sexual conduct is 16. *In re J.M.*, 575 S.E.2d at 444 ("Whether labeled 'minor' or 'adult,' however, the General Assembly has already determined that persons who are at least sixteen years old are sufficiently old to decide whether to engage in sexual intercourse." (citing O.C.G.A. § 16-6-3(a))). All individuals in the hotel room with Mr. Green were at least 16 years old.

*See, e.g., Mauk v. Goodrich,* No. CV 109–057, 2009 WL 2914056 (S.D.Ga. Sept. 10, 2009) (Hall, J.) ("[T]he rule established in *Lawrence* is a new rule of substantive law that may be applied retroactively to cases on collateral review.") (citing *Muth v. Frank,* 412 F.3d 808, 817 (7th Cir.2005)).[17]

Finally, on Green's Motion for New Trial, the Cherokee County Superior Court indicated that a decision from the Pickens County Superior Court vacating the underlying sodomy conviction would bolster Green's argument. (Tr. Sept. 9, 2009 Mot. New Trial Hrg. at 70, Doc. 5–3.) The Cherokee County Superior Court judge explained that if a Pickens County Superior Court judge had directly addressed the merits of Plaintiff's argument that his underlying conviction was void—and ruled in Green's favor—Green would "probably" be able to rely on this ruling to support his case because he could then turn to a ruling "on issues of privacy and other things by which this [Cherokee County Superior] Court might have been bound." (*Id.* at 70–71.)[18] Instead, the Cherokee County Superior Court only addressed the "issues of privacy" tangentially, on Green's motion for new trial. The court stated that the "issues of privacy . . . were never adjudicated . . . [and are] presumed to be taken care of by the plea, and all that was waived by the plea." (*Id.* at 71.)

Shortly thereafter, the Pickens County Superior Court was given the first oppor-tunity to consider the merits of Green's privacy arguments. The Pickens Superior Court ruled in 2010 that, in light of *Powell* and *Lawrence,* the sodomy sentence it had imposed years earlier was in fact void. (Mar. 10, 2010 Pickens Cnty. Ord., Doc. 21–1.) Although this decision was reversed on procedural grounds, it demonstrates that trial counsel's inadequate assistance—his failure to give the Cherokee County Superior Court an opportunity to consider similar issues of privacy on an objection to the use of the sodomy conviction at the 2009 registration trial—was prejudicial. Accordingly, Green has established prejudice as required by *Strickland* and its progeny.

Because of its erroneous determination that Green had not shown prejudice, the Georgia Court of Appeals pretermitted the question of whether Green had shown cause, that is, whether Green had shown that "counsel's performance was deficient, . . . [that it] 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). By the time of Green's trial for the offense of failure to register as a sex offender it was clear beyond peradventure that private consensual sodomy between persons legally able to consent could not, as a matter of both Georgia and federal constitutional law, be criminalized. The failure of trial counsel to challenge the use of a conviction

---

17. The court in *Mauk* ultimately found that the petitioner was not a beneficiary of the Supreme Court's holding in *Lawrence* because the conduct underlying the petitioner's conviction, sexual conduct with a woman struggling to escape, was clearly not consensual and took place in a wooded area rather than a private home. *Mauk,* 2009 WL 2914056, at *2–3.

18. Even the Cherokee County Assistant District Attorney recognized that the Pickens County Superior Court "may be correct in vacating the judgment." (Tr. Sept. 9, 2009 Hrg. Mot. New Trial at 4–5, Doc. 5–3.) Although he questioned whether the Pickens County Superior Court could vacate the conviction, he stated that if it "were to inquire into the conviction itself . . . and decide to vacate it, then certainly I wouldn't have any objection to dismissing the underlying indictment." (*Id.* at 4.)

obtained pursuant to a statute that purported to criminalize private consensual sodomy between two persons above the age of consent, and an indictment that alleged only private consensual sodomy, was deficient and fell below an objective standard of reasonableness.

Just as it is unthinkable that a conviction of miscegenation entered before *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), was decided could be used after that decision to establish an element of a crime, so is it unthinkable that a conviction based on constitutionally protected private consensual sexual conduct entered before *Powell* or *Lawrence* was decided could be so used.[19] Counsel who fails to object to the use of an extant sodomy conviction that on its face raises serious concerns as to its constitutional validity has failed to provide effective assistance.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Petitioner Charlton Green's Objections [Doc. 17] to the Magistrate Judges Report and Recommendation and **DECLINES TO ADOPT** the R & R [Doc. 15]. The Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED;** the Judgment of Conviction of a violation of O.C.G.A. § 42–1–12 imposed upon Petitioner Green is hereby **VACATED** and set aside; and Petitioner is **RELEASED** from the sentence imposed. The Defendant is **DIRECTED** to take all actions necessary consistent with the holding of this Order. The Clerk is **DIRECTED** to close the case.

---

**19.** It is of no consequence for the Court's analysis that Green's sodomy conviction was entered after *Powell* but before *Lawrence*. He pled guilty to sodomy in 1997, before the decisions in *Powell* and *Lawrence* were rendered.